# STATE OF MICHIGAN

# COURT OF APPEALS

CHERYL MASSA, DAMIAN MASSA, JR.,
ALISHA MASSA, NATHAN MASSA, and
ROCHELLE MASSA,

Plaintiffs-Appellants,

v

CITY OF LIVONIA, SGT. MICHAEL
MOCKERIDGE, SGT MICHAEL KINGSBURY,
SGT. PATRICK MOUG, DETECTIVE
O'LEARY, DETECTIVE TIMOTHY CHALK,
OFFICER LORA CLAYPOOL, UNKNOWN
POLICE OFFICERS, and LIVONIA POLICE
DEPARTMENT,

Defendants-Appellees.

UNPUBLISHED
February 2, 2016

No. 324913
Ingham Circuit Court
LC No. 14-000984-CZ

Before: SHAPIRO, P.J., and O'CONNELL and BORRELLO, JJ.

PER CURIAM.

Plaintiffs appeal by right a November 10, 2014, trial court order granting defendants' motion for summary disposition pursuant to MCR 2.116(C)(7), (C)(8) and (C)(10). For the reasons set forth in this opinion, we affirm.

## A. FACTS

This case arises from a search of plaintiffs' residential home and property in Mason, Michigan that defendant Livonia Police Department and the named individual defendant police officers executed on May 23, 2012, pursuant to a valid search warrant. The search warrant was issued following an investigation involving plaintiff Damian Massa Jr.'s shipping company and allegations of organized theft of plastic shipping pallets used in the automotive industry. The warrant authorized police to search "[t]he entire premises and curtilage and all storage areas." Plaintiffs do not dispute defendants' assertion that the premises included a two-story single family residence on a 15-acre plot of land that included two pole barns. The warrant authorized police to seize a broad range of property including, among other things, business records, vehicles, trailers, weapons and "[a]ny and all items purchased with proceeds gained through criminal enterprise."

-1-

According to plaintiffs, at about 7:30 a.m. on May 23, 2012, pursuant to the warrant, approximately 20 officers from defendant Livonia Police Department conducted a 14-hour search of the Massa property. Plaintiffs Damian and Cheryl Massa and their daughter Alisha Massa, a veterinary school student, were at home when police arrived. The three were informed that they were not under arrest, but were detained at the home for the entire duration of the search. Police allegedly refused to allow Alisha to attend a summer training position at veterinary school and refused to allow her to call to inform the school to report her absence.

As police arrived, plaintiff Rochelle Massa, age 16, had just departed to drive to high school. According to plaintiffs, Livonia officers in an unmarked vehicle pursued her. Unaware that the unmarked vehicle was a police vehicle, Rochelle tried to speed away, but the officers engaged in a high-speed chase until a Mason County marked patrol car effectuated a traffic stop. The officers eventually allowed Rochelle to proceed to high school. In subsequent court filings, plaintiffs alleged that officers approached Rochelle with guns drawn, forced her out of her vehicle, and required her to sit in the police cruiser before allowing her to proceed to school.

In addition, at some point, plaintiff Nathan Massa age 19, arrived home from his college dorm while police were conducting the search. Plaintiffs alleged that, upon his arrival, police surrounded his pickup truck with guns drawn and ordered Nathan inside the house where they detained him for the duration of the search. Police refused to allow Nathan to attend a job interview and they allegedly searched his vehicle and left personal belongings in the front yard.

According to plaintiffs Damian, Cheryl, Alisha, and Nathan, they were detained inside the home for 14 hours where they were required to sit on a sofa "without food or water and denied the use of a bathroom unless given permission and accompanied by an officer - - which was mostly denied throughout the day." Plaintiffs alleged that defendants refused to allow Cheryl to call her attorney, refused to allow her to use her phone, and grabbed an iPad out of her hand while she was sitting on the couch. Plaintiffs also alleged that defendants: left trash and items strewn throughout the house, left food in the kitchen out to spoil, verbally harassed Alisha by telling her that they owned everything in the house until she began "hysterically crying," threw plaintiffs' fresh produce and meat into the dirt and left it to spoil and rot for hours, forcefully removed televisions and electronics from the walls and homes "damaging both the items and the structure of the home," and intentionally tracked mud and water in the home.

On November 7, 2012, plaintiffs commenced this suit.[1] Plaintiffs did not contest the validity of the search warrant on its face, and instead alleged that the manner in which police conducted the search violated their constitutional rights, constituted gross negligence and amounted to tortious conduct. Thereafter, plaintiffs stipulated to dismiss all of their federal claims. The state law claims in plaintiffs' amended complaint were as follows:[2] (1) violation of

---

[1] The suit was eventually removed to federal court before plaintiffs stipulated to dismiss all of their federal claims. The case was remanded to the Wayne Circuit Court before the court granted defendants' motion to change venue to Ingham Circuit Court.

[2] Plaintiffs filed a second-amended complaint and added claims alleging violations of the state constitution; however, the trial court granted defendants' motion to strike the second-amended

MCL 764.2a for failing to have a local officer accompany the Livonia officers during the search outside Livonia's jurisdiction; (2) gross negligence; (3) false arrest/false imprisonment; (4) assault; (5) conversion; and (6) Intentional Infliction of Emotional Distress (IIED).

Defendants moved for summary disposition pursuant to MCR 2.116(C)(7) (C)(8) and (C)(10). Defendants argued that the City and Livonia Police Department were one entity that was entitled to governmental immunity because the alleged wrongful conduct occurred when the City was engaged in a governmental function. With respect to the individual officers, defendants argued that the gross negligence and the intentional tort claims were barred by governmental immunity. Defendants argued that the officers' conduct was lawful and done in furtherance of executing the search warrant and the officers did not act in bad faith during the search.

Defendants argued that claims involving the traffic stop of Rochelle failed where a Mason County officer, as opposed to any of the named defendants, effectuated the traffic stop. In addition, defendants argued that all claims against defendant Sergeant Michael Mockeridge should be dismissed where he was not present at the Massa residence during the search. Defendants attached Mockeridge's affidavit in support of this argument wherein Mockeridge averred that he was not present at the Massa residence during the search. Defendants also argued that plaintiffs' claim under MCL 764.21a failed where the statute did not authorize an independent cause of action and where at least two deputies from the Ingham County Sheriff's Department accompanied the Livonia officers during the search. Defendants attached the affidavit of defendant Sergeant Patrick Moug to support this argument.

On November 10, 2014, the trial court held a motion hearing and granted defendants' motion for summary disposition in its entirety. The court treated the Livonia Police Department and the City as one entity, explaining that the City was entitled to governmental immunity where the general nature of the activity giving rise to the claims involved the governmental function of maintaining a police department. The court held that plaintiffs claim under MCL 764.2a failed where the statute did not authorize an independent cause of action and where Moug's affidavit was uncontested and showed that Ingham County officers participated in the search.

Next, the court dismissed defendant Mockeridge where his affidavit was undisputed and established that he was not at the scene during the search and where there were no allegations that Mockeridge acted in bad faith assuming, as plaintiffs' argued, that he submitted the affidavit in support of the search warrant. The court proceeded to grant summary disposition in favor of the remaining individual officers, finding that plaintiffs' claims were barred by governmental immunity. The court held that the facts alleged could not amount to false arrest/imprisonment where *Michigan v Summers*, 425 US 692; 101 S Ct 2587; 69 L Ed 2d 349 (1981), and *Muehler v Mena*, 544 US 93; 125 S Ct 1465; 161 L Ed 2d 299 (2005), established a categorical rule that officers may detain occupants of a home during the execution of a search warrant. Otherwise, the alleged facts did not show unreasonableness.

---

complaint and the case proceeded on plaintiffs' amended complaint. The motion to strike is not at issue in this appeal.

With respect to gross negligence, the court found that, at best, the alleged facts established that the officers acted in a negligent or careless manner. Similarly, the court held that the alleged facts failed to support any of the alleged intentional tort claims. The court found that Ingham County officers effectuated the traffic stop of Rochelle, thus, that claim failed as to the Livonia officers. On November 10, 2014, the court entered a written order granting summary disposition in favor of defendants. This appeal ensued.

## B. STANDARDS OF REVIEW

Plaintiffs contend that the trial court erred in granting summary disposition in favor of defendants.

We review de novo a trial court's ruling on a motion for summary disposition. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). The trial court granted summary disposition pursuant to MCR 2.116(C)(7), (8) and (10). Summary disposition is proper under MCR 2.116(C)(7) where a party enjoys immunity under the law. "In determining whether summary disposition under MCR 2.116(C)(7) is appropriate, a court considers all documentary evidence submitted by the parties, accepting as true the contents of the complaint unless affidavits or other appropriate documents specifically contradict them." *Blue Harvest, Inc v. Dep't of Trans*, 288 Mich App 267, 271; 792 NW2d 798 (2010). "If the facts are not in dispute and reasonable minds could not differ concerning the legal effect of those facts, whether a claim is barred by immunity is a question for the court to decide as a matter of law." *Id.* (quotation marks and citation omitted).

Summary disposition is proper under MCR 2.116(C)(8) where the alleged claims are "so clearly unenforceable as a matter of law that no factual development could possibly justify recovery." *Maiden*, 461 Mich at 119 (quotation marks and citation omitted). Summary disposition is proper under MCR 2.116(C)(10) where, when viewed in a light most favorable to the non-moving party, "the proffered evidence fails to establish a genuine issue regarding any material fact." *Id.* at 120.

## C. ANALYSIS

### I. STATE CONSTITUTIONAL CLAIMS

At the outset, we note that plaintiffs dedicate a significant portion of their brief to arguing the validity of their state constitutional claims. These arguments are baseless. Plaintiffs did not allege any state constitutional claims in their amended complaint. Plaintiffs attempted to add state constitutional claims to a second-amended complaint, but the circuit court granted defendants' motion to strike the second-amended complaint and indicated that it would proceed to address defendants' motion for summary disposition as to plaintiffs' amended complaint. Plaintiffs do not appeal the circuit court's ruling on the motion to strike; thus, this appeal turns on the claims set forth in plaintiffs' amended complaint. The amended complaint contained a gross negligence claim, tort claims, and a claim alleging a violation of MCL 764.2a. It did not, however, contain any state constitutional claims. Moreover, as defendants correctly point out, our Supreme Court has not recognized a private cause of action against a municipality or

individual governmental employees based on an alleged violation of the state constitution. See *Jones v Powell*, 462 Mich 329, 335; 612 NW2d 423 (2000).

## II. MCL 764.2a

Plaintiffs alleged defendants violated MCL 764.2a, which provides in relevant part as follows:

> (1) A peace officer of a county, city, village, township, or university of this state may exercise the authority and powers of a peace officer outside the geographical boundaries of the officer's county, city, village, township, or university under any of the following circumstances:
>
> * * *
>
> (b) If the officer is enforcing the laws of this state *in conjunction with a peace officer of any other county*, city, village, township, or university in which the officer may be. [Emphasis added.]

Plaintiffs alleged that defendants, Livonia police officers, effectuated a search of their home in Mason, Michigan, which is outside of Livonia's jurisdiction. Plaintiffs alleged that defendants did not conduct the operation in conjunction with local Mason authorities or Ingham County Sheriff's Deputies in violation of MCL 764.2a(1)(b).

The trial court properly granted summary disposition as to plaintiffs' claim under MCL 764.2a. Plaintiffs fail to cite any authority to support that MCL 764.2a confers a private cause of action on which plaintiffs can recover damages. Moreover, even if the statute did hypothetically confer a private cause of action, the trial court properly granted summary disposition as to this claim pursuant to MCR 2.116(C)(10).

Plaintiffs failed to submit any documentary evidence to counter Moug's affidavit averring that two Ingham County officers participated in the search. Where the burden of proof at trial rests on a nonmoving party, in responding to a motion for summary disposition under MCR 2.116(C)(10), the nonmoving party may not rest on the allegations in the pleadings, but must "set forth specific facts showing that a genuine issue of material fact exists." *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996). "If the opposing party fails to present documentary evidence establishing the existence of a material factual dispute, the motion is properly granted." *Id*. at 363. Here, plaintiffs failed to offer any documentary evidence in response to Moug's affidavit. Therefore, there were no facts to dispute that Ingham County officers accompanied defendants during the search and the trial court properly dismissed any claim under MCL 764.2a pursuant to MCR 2.116(C)(10). *Quinto*, 451 Mich at 363.

## III. CLAIMS INVOLVING THE CITY

Before addressing the substance of plaintiffs' claims against the City, we note that in the lower court plaintiffs did not dispute that the Livonia Police Department and the City were one in the same entities and the trial court treated both defendants as a single entity. Therefore, for purposes of this appeal, we will refer to both entities collectively as "the City."

Under the Government Tort Liability Act (GTLA), MCL 691.1401 et seq., "[a]bsent a statutory exception, a governmental agency is immune from tort liability when it exercises or discharges a governmental function." *Maskery v Bd of Regents*, 468 Mich 609, 613; 664 NW2d 165 (2003), citing MCL 691.1407(1). Because plaintiffs did not allege that a statutory exception applied, if we determine that the City is a governmental agency that was discharging a governmental function when its agents conducted the search, then the City was entitled to governmental immunity under the GTLA. *Id*.

The City is a governmental agency. MCL 691.1401(a) defines "governmental agency" to include "this state or a political subdivision," and cities and municipal corporations are "political subdivisions" for purposes of the GTLA. MCL 691.1401(d) (e).

Regarding whether the City was engaged in a "governmental function," "[t]he term 'governmental function' is to be broadly construed, and the statutory exceptions are to be narrowly construed." *Maskery*, 468 Mich at 613. MCL 691.1401(b) provides:

> 'Governmental function' means an activity that is expressly or impliedly mandated or authorized by constitution, statute, local charter or ordinance, or other law. Governmental function includes an activity performed on public or private property by a sworn law enforcement officer within the scope of the law enforcement officer's authority, as directed or assigned by his or her public employer for the purpose of public safety.

In contrast, "[w]henever a governmental agency engages in an activity which is not expressly or impliedly mandated or authorized by constitution, statute, or other law (i.e., an ultra vires activity), it is not engaging in the exercise or discharge of a governmental function." *Ross v Consumers Power Co*, 420 Mich 567, 620; 363 NW2d 641 (1984).

In this case, the general activity giving rise to this suit involved the management, operation and control of a police department, or more specifically, the department's execution of a facially-valid search warrant. Maintaining a police force and activity performed by a law enforcement officer within the scope of his or her authority constitutes a governmental function. *Ross*, 420 Mich at 625; MCL 691.1401(b). The officers were acting within their authority as law enforcement officers when they executed the search warrant. Plaintiffs do not dispute that the warrant was valid on its face. Thus, the officers had authority to execute the warrant.

Plaintiffs contend that because the officers allegedly engaged in tortious conduct and gross negligence during execution of the search warrant, the City was not engaged in a governmental function. This argument lacks merit. "To determine whether a governmental agency is engaged in a governmental function, *the focus must be on the general activity*, not the specific conduct involved at the time of the [alleged] tort." *Pardon v Finkel*, 213 Mich App 643, 649; 540 NW2d 774 (1995) (emphasis added). Here, as discussed above, the general activity at the time of the alleged torts and gross negligence involved police activity that was authorized by a search warrant. Thus, the City was engaged in a governmental function for purposes of this case. *Id*. Because plaintiffs' did not allege that any statutory exceptions apply, the City was entitled to immunity and the trial court did not err in granting summary disposition in favor of the City under MCR 2.116(C)(7). *Ross*, 420 Mich at 624-625; *Pardon*, 213 Mich App at 649.

## IV. CLAIMS INVOLVING DEFENDANT MOCKERIDGE

In their motion for summary disposition, defendants argued that Mockeridge should be dismissed from the action because he was not present at the time of the search. Defendants attached Mockeridge's affidavit to their motion wherein Mockeridge averred that he was at a different location when officers searched plaintiffs' property. Plaintiffs did not submit any documentary evidence to counter the affidavit, but argued that Mockeridge was the affiant for the search warrant. However, irrespective of whether Mockeridge was the affiant for the search warrant, in their amended complaint plaintiffs did not contest the validity of the search warrant. Nor did plaintiffs contend that Mockeridge engaged in wrongful conduct when he allegedly submitted an affidavit in support of the warrant. Instead, the genesis of plaintiffs' claims involved conduct that occurred during execution of the search warrant at plaintiffs' residence. Because plaintiffs' failed to respond with documentary evidence to dispute Mockeridge's affidavit, the trial court properly granted summary disposition in favor of Mockeridge pursuant to MCR 2.116(C)(10). *Quinto*, 451 Mich at 363.

## V. CLAIMS INVOLVING THE REMAINING INDIVIDUAL OFFICERS

The trial court found that the individual officers were entitled to qualified governmental immunity with respect to plaintiffs' tort and gross negligence claims. We proceed by addressing each intentional tort claim before addressing the gross negligence claim.

## A. INTENTIONAL TORTS

For lower-level governmental employees such as the officers in this case, the test set forth in *Ross*, 420 Mich at 567, governs whether the employee is immune from liability for intentional torts. *Odom v Wayne County*, 482 Mich 459, 470, 480; 760 NW2d 217 (2008). Under the *Ross* test, a governmental employee is entitled to immunity from intentional tort claims where he or she has shown the following:

> (a) The acts were undertaken during the course of employment and the employee was acting, or reasonably believed that he was acting, within the scope of his authority,

> (b) the acts were undertaken in good faith, or were not undertaken with malice, and

> (c) the acts were discretionary, as opposed to ministerial. [*Odom*, 482 Mich at 480, citing *Ross*, 420 Mich. at 467.]

Plaintiffs do not dispute that the officers' actions were discretionary as opposed to ministerial and plaintiffs do not appear to contest that the actions occurred during the course of the officers' employment. Instead, plaintiffs' argument focuses on the alleged bad faith and malicious conduct of the officers; plaintiffs tie this aspect of their argument to an argument that the officers were not acting within the scope of their authority.

For purposes of bad faith and malice, in *Odom*, our Supreme Court explained that "[t]his Court has described a lack of good faith as malicious intent, capricious action or corrupt conduct

or willful and corrupt misconduct." *Odom*, 482 Mich at 474 (internal quotations, citations and footnotes omitted). The *Odom* Court continued, "[i]n addition, this Court has held that willful and wanton misconduct is made out only if the conduct alleged shows an intent to harm or, if not that, such indifference to whether harm will result as to be the equivalent of a willingness that it does." *Id*. at 475 (quotation marks, citations, and footnotes omitted).

We proceed by determining whether the trial court properly held that the individual officers were immune from each intentional tort claim.

### i. False Imprisonment/Arrest

In their complaint, plaintiffs' alleged that the detentions of Damian, Cheryl, Alisha and Nathan for the duration of the search amounted to false imprisonment. On appeal, plaintiffs also argue that the traffic stop of Rochelle amounted to false arrest/imprisonment.

"To prevail on a claim of false arrest or false imprisonment, a plaintiff must show that the arrest was not legal . . . ." *Peterson Novelties, Inc v City of Berkley*, 259 Mich App 1, 18; 672 NW2d 351 (2003). "If the arrest was legal, there has not been a false arrest or a false imprisonment." *Id*. False imprisonment requires a showing of unlawful restraint—i.e. the defendant lacked any authority or right to confine the plaintiff. *Moore v Detroit*, 252 Mich App 384, 387; 652 NW2d 688 (2002) (quotation marks and citations omitted).

On appeal, plaintiffs contend that the detentions violated the Fourth Amendment and therefore amounted to an unlawful imprisonment. Specifically, plaintiffs contend that the 14 hour detention was unreasonable and therefore did not comply with *Summers*, 452 US at 692. In doing so, plaintiffs essentially couch a Fourth Amendment/42 USC § 1983 claim as a false imprisonment claim. However, plaintiffs waived any argument with respect to the Fourth Amendment when they stipulated to dismiss all of their federal claims. Plaintiffs cannot agree to dismiss their alleged violations of federal law in the lower court only to argue on appeal that violation of federal law forms the basis of their state false imprisonment claim. See *Dresselhouse v Chrysler Corp*, 177 Mich App 470, 477; 442 NW2d 705 (1989) ("[a] party is not allowed to assign as error on appeal something which his or her own counsel deemed proper at trial since to do so would permit the party to harbor error as an appellate parachute.") Nevertheless, we will address the merits of plaintiffs' argument.

In *Summers*, 452 US at 693, as Detroit police officers were preparing to execute a search warrant to search a residential home, they encountered the respondent as he was leaving the home. The officers detained him inside the home for the duration of the search and then arrested him after finding narcotics inside the home and after ascertaining that the respondent was the home owner. *Id*. In addition, police conducted a pat-down search of the respondent prior to his arrest and discovered heroin. *Id*. The respondent moved to suppress evidence of the heroin, arguing that the officers violated his Fourth Amendment rights in part because the initial detention amounted to an unlawful seizure of his person. *Id*. at 693-694.

The United States Supreme Court held that during the execution of a valid search warrant for contraband, police officers could detain occupants of the premises, explaining:

for Fourth Amendment purposes, we hold that a warrant to search for contraband founded on probable cause implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted. [*Summers*, 452 US at 705 (footnotes omitted).]

The Court reasoned that such detentions were proper because of the legitimate law enforcement interests at stake including the interest in preventing flight, minimizing the risk of harm to the officers and the occupants, and having the occupants present to facilitate the orderly completion of the search. *Id*. at 701-702. The *Summers* Court determined that

[s]uch detentions are appropriate . . . because the character of the additional intrusion caused by detention is slight and because the justifications for detention are substantial . . . [T]he detention of an occupant 'is surely less intrusive than the search itself,' and the presence of a warrant assures that a neutral magistrate has determined that probable cause exists to search the home. [*Muehler*, 544 US at 98, quoting *Summers*, 452 US at 701.]

More recently, in *Muehler*, 544 US at 93, the Court again addressed the validity of a detention incident to a lawful search. In that case, following a gang-related drive-by shooting, police obtained a search warrant for a residential home at 1363 Patricia Avenue where a suspected gang member resided. *Id*. at 95. The warrant authorized a "broad search of the house and premises for among other things, deadly weapons and evidence of gang membership." *Id*. at 95-96. When police officers arrived at the home to effectuate the search, they encountered the respondent, Iris Mena, who resided there with several other people. *Id*. Police handcuffed Mena and the other occupants of the home and brought them to the garage where an officer supervised the occupants for the duration of the two to three hour search. *Id*. at 95, 100. The supervising officer questioned Mena and others about their immigration status and Mena provided her documentation to the officer. *Id*. at 95. When the search concluded, the officers removed Mena's handcuffs and departed the home. *Id*.

Thereafter, Mena commenced a civil action under 42 USC § 1983, arguing, *inter alia*, that detaining her in handcuffs for the duration of the search violated her Fourth Amendment rights. *Id*. at 95. The United States Supreme Court rejected this argument, holding that the detention was proper under *Summers*, 452 US at 692; the Court explained:

Mena's detention was, under *Summers*, plainly permissible. *An officer's authority to detain incident to a search is categorical*; it does not depend on the quantum of proof justifying detention or the extent of the intrusion to be imposed by the seizure. Thus, Mena's detention for the duration of the search was reasonable under *Summers* because a warrant existed to search 1363 Patricia Avenue and she was an occupant of that address at the time of the search. [*Muehler*, 544 US at 98 (emphasis added) (quotation marks, citations and footnotes omitted).]

After concluding that the detention in and of itself was proper under *Summers*, the *Muehler* Court proceeded to address whether the manner in which police effectuated the

detention—i.e. the use of handcuffs for the entire duration of the search—nevertheless rendered the detention unconstitutional.  The Court explained:

> Inherent in *Summers*' authorization to detain an occupant of the place to be searched is the authority to use reasonable force to effectuate the detention. See *Graham v Connor*, 490 US 386, 396, 104 L Ed 2d 443, 109 S Ct 1865 (1989) ("Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it").  Indeed, *Summers* itself stressed that the risk of harm to officers and occupants is minimized 'if the officers routinely exercise unquestioned command of the situation.'  [*Muehler*, 544 US at 98-99, quoting *Summers*, 452 US at 703.]

The *Muehler* Court concluded that the officers acted reasonably when they kept Mena and the three other occupants handcuffed in the garage for the duration of the "2-to 3-hour" search.  *Muehler*, 544 US at 99-100.  That Mena was not a suspect did not change the analysis; rather, the Court explained, "*Summers* makes clear that when a neutral magistrate has determined police have probable cause to believe contraband exists, '[t]he connection of an occupant to [a] home' alone 'justifies a detention of that occupant.'"  *Muehler*, 544 US at 100 n 2, quoting *Summers*, 452 US at 703-704.  Moreover, the Court noted:

> [T]his was no ordinary search.  The governmental interests in not only detaining, but using handcuffs, are at their maximum when, as here, a warrant authorizes a search for weapons and a wanted gang member resides on the premises.  In such inherently dangerous situations, the use of handcuffs minimizes the risk of harm to both officers and occupants.  [*Muehler*, 544 US at 100 (citations omitted).]

In addition, the Court rejected Mena's argument that the duration of the use of the handcuffs rendered the detention unreasonable.  *Id*. at 100.  The Court acknowledged that "[t]he duration of a detention can, of course, affect the balance of interests under *Graham*," but concluded, "the 2-to 3-hour detention in handcuffs in this case does not outweigh the government's continuing safety interests" given that the search involved "a search of a gang house for dangerous weapons."  *Id*.

Two years after its decision in *Muehler*, 544 US at 93, in a per curiam opinion, in *Los Angeles Co v Rettele*, 550 US 609, 613-614; 127 S Ct 1989; 167 L Ed 2d 974 (2007), the Supreme Court explained:

> In executing a search warrant officers may take reasonable action to secure the premises and to ensure their own safety and the efficacy of the search . . . .  The test of reasonableness under the Fourth Amendment is an objective one [] Unreasonable actions include the use of excessive force or restraints that cause unnecessary pain or are imposed for a prolonged and unnecessary period of time.  [*Id*. (citations omitted).]

The Court went on to note that, "[w]e have recognized that special circumstances, or possibly a prolonged detention, might render a search unreasonable." *Id*. at 615.

In this case, the search warrant authorized the officers to search for evidence of an alleged criminal enterprise and to seize weapons.[3] Pursuant to *Summers*, during the execution of the search warrant, police had the authority to detain individuals with a connection to the premises for purposes of their safety and the efficacy of the search. *Rettele*, 550 US at 609; *Muehler*, 544 US at 100 n 2; *Summers*, 452 US at 703-704. Here, Damian, Cheryl, Alisha and Nathan all had a connection to the premises as they were at the home when police arrived to conduct the search or, in Nathan's case, arrived during the search. Thus, police had the authority to detain plaintiffs' during the search. *Muehler*, 544 US at 100.

With respect to the traffic stop of Rochelle, the only documentary evidence submitted by the parties—Moug's affidavit—established that Ingham County officers, not defendants, effectuated the traffic stop. By failing to submit evidence to contest Moug's affidavit, plaintiffs failed to meet their burden to create a question of fact and summary disposition as to any alleged false imprisonment/arrest claim of Rochelle was proper. MCR 2.116(C)(10); *Quinto*, 451 Mich at 363.

Plaintiffs argue that the facts "don't support lack of involvement of Defendants," in the traffic stop and in the lower court plaintiffs argued that they named "unknown officers" as defendants such that the officers effectuating the stop were part of this action. However, in another part of their pleading, plaintiffs alleged that defendants were Livonia officers who acted without any participation of Ingham County officers in violation of MCL 764.2a. Thus, because plaintiffs did not name Ingham County officers in their pleading and failed to submit evidence to contest Moug's affidavit, summary disposition was proper under MCR 2.116(C)(10).

---

[3] *Summers* drew a distinction between "contraband" and "evidence." In a footnote, the *Summers* Court noted, "[w]e do not decide whether the same result would be justified if the search warrant merely authorized a search for evidence." *Id*. at 705 n 20, citing *Zurcher v Stanford Daily*, 436 US 547; 98 S Ct 1970; 56 L Ed 2d 525 (1978) (a case involving police search of a newspaper headquarters for photographs of suspected criminals). However, subsequent to *Summers*, the Court in *Muehler*, 544 US at 93 explained that "[a]n officer's authority to detain *incident to a search is categorical*; it does not depend on the quantum of proof justifying detention or the extent of the intrusion to be imposed by the seizure" (emphasis added). The *Muehler* Court did not draw a distinction between evidence and contraband and the Court's language supports that *Summers* created a broad categorical rule allowing detention incident to a lawful search. Similarly, in *Rettele*, 550 US at 609, the Court did not draw a distinction between contraband and evidence when it held that "[i]n executing a search warrant officers may take reasonable action to secure the premises and to ensure their own safety and the efficacy of the search." Post-*Rettele*, for purposes of *Summers*, courts have "rendered the evidence/contraband distinction immaterial where occupants of a building are detained to ensure the safety of the officers executing a search warrant." *US v Allen*, 618 F 3d 404, 410 (CA 3, 2010).

Moreover, even assuming that plaintiffs included the officers who effectuated the stop as defendants, the complaint asserted that Rochelle had "just left her home," when police arrived to conduct the search and then began pursuing Rochelle. Thus, Rochelle had a connection to the premises to be searched such that the officers could have reasonably believed they had authority to stop and detain Rochelle under *Summers*. *Muehler*, 544 US at 100 n 2. The facts do not support a reasonable inference that the officers acted in bad faith or with malice in effectuating the stop and the officers were entitled to immunity with respect to the false imprisonment claim involving Rochelle. *Odom*, 482 Mich at 480.

Plaintiffs contend that the duration of the detentions of Damian, Cheryl, Alisha and Nathan were unreasonable and therefore violated the Fourth Amendment such that the detentions amounted to unlawful imprisonment. Plaintiffs cite *Leveto v Lapina*, 258 F 3d 156 (CA 3, 2001), in support of their argument.

In *Leveto*,

> agents of the Internal Revenue Service, as part of an investigation into a doctor's tax practices, carried out a search warrant at the doctor's office, detained him and his wife for almost eight hours, restricted them from communicating with others for the entire period, continually interrogated them, subjected the doctor to 'the inconvenience and indignity of a forced ride with IRS agents to his home and back to his office,' and 'prevented [him] from responding to client needs.' [*United States v Allen*, 618 F 3d 404, 410 (CA 3, 2010), quoting *Leveto*, 258 F 3d at 160, 169.]

The *Leveto* Court held that the seizure violated the Fourth Amendment, reasoning that the seizure was highly intrusive, was prolonged in that it lasted eight hours, and "did little to advance the law enforcement interests that were found to justify the detention in *Summers*." *Leveto*, 258 F 3d at 169-170. Specifically, the Court reasoned that "there was no compelling need to detain Dr. Leveto to protect the safety of the agents," because it was not an investigation "into a type of offense often accompanied by violence." *Id*. at 171. Nevertheless, the *Leveto* Court concluded that the IRS agents were entitled to qualified immunity under federal law because, despite the unconstitutional seizure, "a reasonable agent could have believed, in light of the case law at the time, that the detention[] . . . [was] lawful." *Id*. at 172.

In this case, like in *Leveto*, even if we were to agree with plaintiffs and conclude that the complaint supported a reasonable inference that the detentions were objectively unreasonable, the facts do not support that the officers acted outside the scope of their authority or that the officers acted in bad faith or with malice for purposes of the *Ross* test. *Odom*, 482 Mich at 480. Here, plaintiffs do not dispute that their residence included 15 acres of land, two pole barns, and a two-story residential home. The search warrant authorized police to seize weapons and referenced a criminal organization. Thus, the officers could have reasonably believed that it was necessary for their safety to detain all of the occupants of the home for the duration of the search and to investigate Rochelle's vehicle as it departed when police arrived at the scene. The officers could have reasonably concluded that it would be interruptive and pose a danger if people were arriving and departing from the premises during the search. Moreover, officers allowed plaintiffs to use the restroom and, unlike in *Leveto*, there are no allegations that officers

-12-

moved plaintiffs to a different location, interrogated anyone, or used handcuffs. In short, given all of the circumstances, the facts alleged in the complaint fail to create a reasonable inference that the officers acted outside of their authority or acted in bad faith or with malice when they detained plaintiffs. *Odom*, 482 Mich at 480. Therefore, plaintiffs failed to allege facts to support an unlawful imprisonment claim and the trial court properly granted summary disposition on that claim pursuant to MCR 2.116(C)(7) and (C)(8).

*ii. Conversion*

In their complaint, plaintiffs alleged that defendants wrongfully seized property including farm machinery, personal vehicles, a horse trailer, saddles, all bank accounts, all electronic equipment, an iPad, phones, and computer games. Plaintiffs alleged that the search warrant did not provide "any guidelines to determine the property's ownership or origin," and therefore amounted to conversion.

"In Michigan, conversion is defined generally as any distinct act of domain wrongfully exerted over another's personal property in denial of or inconsistent with the rights therein." *Sarver v Detroit Edison Co*, 225 Mich App 580, 585; 571 NW2d 759 (1997) (quotation marks and citation omitted).

In this case, even assuming all of the allegations in the complaint are true, because the facts do not support a reasonable inference that the officers acted outside their authority, acted in bad faith, or acted with malice in seizing property during the search, the officers were entitled to qualified immunity as to the conversion claim. *Odom*, 482 Mich at 480. Here, as noted above, the search warrant was very broad and it authorized the officers to seize a wide array of property. Plaintiffs did not contest the validity of the search warrant on its face.[4] Thus, the officers were acting under the authority of the law when they seized the items from plaintiffs' property.

Moreover, given the breadth of authority to seize items under the terms of the search warrant, while police perhaps were negligent in pulling televisions off the wall, the evidence does not support a reasonable inference that the officers acted in bad faith or with malice when they seized the property. *Odom*, 482 Mich at 480. With respect to the seizure of items, there are no allegations in the complaint to support that the officers acted with "malicious intent," or engaged in "capricious action or corrupt conduct or willful and corrupt misconduct." *Id*. at 474. The evidence does not support a reasonable inference that the officers intended to harm plaintiffs or acted with "such indifference to whether harm will result as to be the equivalent of a willingness that it does." *Id*. Accordingly, there was no evidence to support that the officers unlawfully seized any property and plaintiffs' conversion claim failed as a matter of law. *Sarver*, 225 Mich App at 585. Summary disposition as to plaintiffs' conversion claim was proper under MCR 2.116(C)(7) and (C)(8).

---

[4] In their brief on appeal, plaintiffs assert that the warrant lacked specificity. However, plaintiffs did not challenge the validity of the warrant in the lower court. Plaintiffs cannot now challenge the validity of the warrant for the first time on appeal. See *Reed v Reed*, 265 Mich App 131, 150; 693 NW2d 825 (2005).

### iii. Assault

Plaintiffs alleged that defendants assaulted Rochelle when they engaged in a pursuit, pulled her over, and ordered her into a police vehicle at gunpoint, surrounded the vehicle driven by Nathan at gunpoint and ordered him to exit the vehicle, and forcibly grabbed an iPad from Cheryl.

"An assault is defined as any intentional unlawful offer of corporal injury to another person by force, or force unlawfully directed toward the person of another, under circumstances which create a well-founded apprehension of imminent contact, coupled with the apparent present ability to accomplish the contact." *Espinoza v Thomas*, 189 Mich App 110, 119; 472 NW2d 16 (1991).

With respect to the allegations involving Rochelle, as noted above, plaintiffs' failed to meet their burden to create a question of fact to support that defendants were the officers who effectuated the traffic stop and summary disposition was proper as to the alleged assault involving Rochelle. See *Quinto*, 451 Mich at 363. Moreover, given that Rochelle had just left the premises when police arrived, the facts do not support a reasonable inference that the officers acted outside their authority, acted in bad faith, or acted with malice when they followed Rochelle and effectuated a traffic stop. *Muehler*, 544 US at 100 n 2. The officers were entitled to immunity with respect to the assault claim involving Rochelle. *Odom*, 482 Mich at 480.

With respect to the allegations involving Cheryl, as noted above, the officers had authority to seize the iPad pursuant to the search warrant. Therefore, plaintiffs cannot show that grabbing the iPad from her hand was unlawful or amounted to bad faith or malice and summary disposition as to this claim was proper under MCR 2.116(C)(7) and (C)(8). *Odom*, 482 Mich at 474; *Espinoza*, 189 Mich App at 119.

Finally, with respect to allegations involving Nathan, as discussed above, the officers had authority to detain individuals connected to the premises during execution of the search warrant. *Muehler*, 544 US at 100. The alleged facts in the complaint do not support a reasonable inference that the officers' use of their weapons was unlawful for purposes of assault. *Espinoza*, 189 Mich App at 119. Rather, the officers had authority to use reasonable force to effectuate the detention of individuals at the premises incident to the valid search warrant. *Muehler*, 544 US at 98-99. The search warrant in this case included an authorization to seize weapons. Thus, it was reasonable for officers to use force to detain Nathan when he drove up to the house while officers were searching. It was reasonable for officers to fear for their safety. The facts show that officers were unaware of who and what was inside of the pickup truck such that it was reasonable for officers to hold Nathan at gunpoint when he drove up to the house. See e.g. *Hinojosa v City of Terrell*, 834 F 2d 1223, 1231 (CA 5, 1988) (noting, "to subject such displays of force to second guessing by a jury may increase the likelihood that the officer will wait until the situation escalates further before drawing his gun, and thereby end up having to (or believing he has to) shoot to protect himself or others."); *Muehler*, 544 US at 98-99 (noting that "the risk of harm to officers and occupants is minimized if the officers routinely exercise unquestioned command of the situation") (quotation marks and citations omitted). In short, plaintiffs' allegations regarding the officers' conduct in regard to Nathan fails to create an issue of fact regarding whether the officers acted with bad faith or malice; thus, defendants were entitled to

immunity with respect to the alleged assault of Nathan. *Odom*, 482 Mich at 474, 480; MCR 2.116(C)(7).

### *iv. IIED*

In their complaint, plaintiffs alleged that the officers' conduct in the aggregate amounted to IIED in that it was "extreme, outrageous, and of such character as not to be tolerated by a civilized society."

"To establish a prima facie claim of intentional infliction of emotional distress, the plaintiff must present evidence of (1) the defendant's extreme and outrageous conduct, (2) the defendant's intent or recklessness, (3) causation, and (4) the severe emotional distress of the plaintiff." *Lucas v Awaad*, 299 Mich App 345, 359; 830 NW2d 141 (2013) (quotation marks and citation omitted). Extreme and outrageous conduct is conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Doe v Mills*, 212 Mich App 73, 91; 536 NW2d 824 (1995). This does not include "mere insults, indignities, threats, annoyances, petty oppressions, and other trivialities." *Id.*

As discussed above, the facts alleged in plaintiffs' complaint do not create an issue of fact to support that the officers acted outside their authority, engaged in bad faith or acted with malice. For the same reasons, plaintiffs IIED claim fails in that the alleged facts do not support a reasonable inference that the officers engaged in extreme and outrageous conduct. *Mills*, 212 Mich App at 92. Rather, the facts show that the officers effectuated a lawful search of plaintiffs' premises and were acting under the authority of the law when they detained plaintiffs for the duration of the search. At best, the complaint contained questions of fact regarding whether the officers were negligent in the manner they conducted the search. The officers could have been more careful when they removed the televisions from the wall, they could have taken care not to leave trash and items strewn about the premises, and they could have wiped their boots outside to minimize the dirt they tracked into the home. However, the nature of the activity involved was bound to disrupt plaintiffs' home and cause inconvenience. Here, a team of 20 officers was tasked with searching a 15-acre parcel of property that included two barns and a two-story home. The officers were bound to track some dirt and mud into the home and to disrupt and dishevel the interior of the home. There was no issue of fact to support that the officers engaged in extreme and outrageous conduct and the trial court did not err in granting summary disposition as to plaintiffs' IIED claim. *Lucas*, 299 Mich App at 359.

In sum, the trial court did not err in granting summary disposition in favor of the individual defendant officers as to all of plaintiffs' intentional tort claims.

### *B. GROSS NEGLIGENCE*

In their complaint, plaintiffs alleged that the officers were grossly negligent where their conduct "was so reckless that it demonstrated a substantial lack of concern for Plaintiffs persons or property rights." Specifically, plaintiffs alleged that defendants acted grossly negligent as follows: throwing Nathan's belongings out of his car onto the ground, throwing fresh produce and meat into the dirt where it spoiled, eating Subway and then leaving trash and waste strewn

about the home and property, forcefully removing televisions and electronics from the home and walls causing damage, tracking water, mud and horse manure throughout the house causing the carpet to be ruined and necessitating multiple steam cleanings, informing Alisha that they owned everything at the home causing her to cry, and detaining plaintiffs for the duration of the search with limited access to the bathroom. In their brief, plaintiffs also argue that the officers were grossly negligent in pursuing Rochelle in an unmarked vehicle.

For claims involving negligent torts, MCL 691.1407(2) provides that a governmental officer or employee is immune from liability if all of the following are met:

> (a) The officer, employee, member, or volunteer is acting or reasonably believes he or she is acting within the scope of his or her authority.

> (b) The governmental agency is engaged in the exercise or discharge of a governmental function.

> (c) The officer's, employee's, member's, or volunteer's conduct does not amount to gross negligence that is the proximate cause of the injury or damage.

"'Gross negligence' means conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." MCL 691.1407(8)(a). "Evidence of ordinary negligence does not create a material question of fact concerning gross negligence," *Maiden*, 461 Mich at 122, and "[s]imply alleging that an actor could have done more is insufficient under Michigan law, because, with the benefit of hindsight, a claim can always be made that extra precautions could have influenced the result." *Tarlea v Crabtree*, 263 Mich App 80, 90; 687 NW2d 333 (2004). Rather, gross negligence "suggests . . . almost a willful disregard of precautions or measures to attend to safety and a singular disregard for substantial risks. It is as though, if an objective observer watched the actor, he could conclude, reasonably, that the actor simply did not care about the safety or welfare of those in his charge." *Id*.

In this case, as discussed above, the governmental agency in this case was involved in the governmental function of conducting police operations. *Odom*, 482 Mich at 479-480. Similarly, there were no facts to dispute that the officers reasonably believed that they were acting within the scope of their authority where the officers had a valid search warrant. *Id*. Furthermore, the alleged facts do not support a reasonable inference that the officers engaged in grossly negligent conduct during their execution of the search warrant. *Id*. With respect to the detention of plaintiffs and pursuit of Rochelle, as previously noted, the officers did not act in bad faith and a rational officer could have concluded that it was reasonable to detain plaintiffs' incident to the search warrant under *Summers*, 425 Mich at 692. The search involved a substantial amount of property including 15 acres, two pole barns, farm equipment, and a two-story home. The search warrant authorized the seizure of a significant amount of property including documents related to organized crime. The officers did not interrogate plaintiffs, they did not handcuff plaintiffs, transport them in police vehicles or detain them longer than necessary to complete the search. Similarly, with respect to drawing their guns on Nathan, the officers had authority under the law to use force, or a show of force, to effectuate the detentions of individuals connected to the premises. *Muehler*, 544 US at 98-99.

In regard to plaintiffs' allegations that the officers threw belongings on the ground, left food out to spoil, left trash and waste strewn about the house, forcefully removed televisions, tracked mud and horse manure throughout the house, yelled at Alisha, and generally were grossly negligent in their search, these facts support, at best, that the officers "could have done more" to take precautions during the search, which is insufficient to create a reasonable inference of gross negligence. See *Tarlea*, 263 Mich App at 90 ("with the benefit of hindsight, a claim can always be made that extra precautions could have influenced the result.") These allegations at best support a reasonable inference that the officers were negligent or careless in conducting the search; however, they do not create a reasonable inference of "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." MCL 691.1407(8)(a).

In short, there was no issue of fact regarding whether the officers reasonably believed that they were acting within the scope of their authority or to dispute that the governmental agency in this case, the City, was engaged in the exercise of a governmental function. Similarly, the alleged facts did not support a reasonable inference that the officers were grossly negligent in conducting the search. Accordingly, the individual officers were entitled to qualified governmental immunity as to the gross negligence claim pursuant to MCL 691.1407(2) and summary disposition as to this claim was proper under MCR 2.116(C)(7).

Affirmed. No costs awarded. MCR 7.219(A).

/s/ Peter D. O'Connell
/s/ Stephen L. Borrello