In the

# United States Court of Appeals

## For the Seventh Circuit

No. 15-1280

VONZELL WHITE,

*Plaintiff-Appellant,*

*v.*

CITY OF CHICAGO, and CHICAGO POLICE OFFICER JOHN O'DONNELL,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 11-cv-7802 — **John Z. Lee**, *Judge.*

ARGUED DECEMBER 11, 2015 — DECIDED JULY 21, 2016

Before KANNE, ROVNER, and HAMILTON, *Circuit Judges.*

HAMILTON, *Circuit Judge.* From 2008 until 2010, the FBI and Chicago Police Department conducted a narcotics investigation on Chicago's West Side called "Operation Blue Knight." As the operation was wrapping up, defendant Officer John O'Donnell applied for dozens of arrest warrants, including one for Vonzell White, the plaintiff in this civil case. Other officers had observed White and his brother sell heroin to an

informant. The observations were in a more comprehensive report that O'Donnell used as the basis for his arrest warrant application. White was arrested, but the charge was dropped. He then brought this civil lawsuit alleging that Officer O'Donnell's actions and a City of Chicago policy violated his Fourth Amendment rights. All of White's claims are based on the theory that Officer O'Donnell failed to present the judge who issued the warrant enough information to establish probable cause for the arrest.

The district court dismissed the policy claim against the City on the pleadings and later granted summary judgment to Officer O'Donnell on the individual claim against him. Although we agree with White on some important legal points, in the end we affirm the judgment in favor of the defendants. Officer O'Donnell's written application for an arrest warrant, supported by his oral testimony about the report of the surveillance of the drug deal, provided probable cause for the arrest warrant.

I.  *Factual and Procedural Background*

A.  *Operation Blue Knight*

From 2008 until 2010, the FBI and the Chicago Police Department jointly targeted high narcotics areas on the West Side of Chicago in "Operation Blue Knight." Operation Blue Knight used confidential informants to carry out and record drug deals. On July 31, 2010, Operation Blue Knight officers set up surveillance with an informant stationed near a bus shelter. The officers were targeting Vernon Chapman, who is plaintiff Vonzell White's brother. Both Chapman and White were known to law enforcement as members of the Traveling Vice Lords gang, a target of the investigation. The officers

watched Chapman and White drive up, park, and walk toward the bus shelter where the informant was waiting. The officers reported that they watched White and Chapman both speak with the informant. White testified at his deposition that Chapman walked thirty feet away from White and spoke alone with the informant. After the conversation, White and Chapman drove away from the area and police ended surveillance. For purposes of reviewing the grant of summary judgment, we assume the officers did not actually see a hand-to-hand transfer of heroin to the informant.

The informant then called the officers and told them that he had purchased heroin from White and Chapman. The officers met with the informant and retrieved the drugs. The informant identified White and Chapman in a photo array, and field tests confirmed that the drugs were heroin. The officers' observations from the July 31 purchase were summarized in a Narcotics & Gang Investigations Section Supplementary Report, called the NAGIS Report, prepared by one of the participating officers.

B.  *Arrest Warrant*

Several months later, in November 2010, Operation Blue Knight officers prepared to arrest and prosecute numerous suspects. Chicago Police Officer John O'Donnell, who did not participate in the July 31 surveillance, was in charge of submitting the arrest warrant requests for Operation Blue Knight. He discussed the matter with the prosecutor and signed a criminal complaint against White on the basis of the NAGIS Report. The complaint form, which is used regularly by the Chicago Police Department, contained spaces for personal details and a brief description of the alleged offense. The complaint against White alleged in relevant part that "Vonzell

White … committed the offense of Delivery of a Controlled Substance in that he/she Knowingly and Unlawfully delivered … a substance containing a controlled substance to wit: 3.0 grams of heroin." The complaint gave the date and street address of the charged delivery but contained no additional factual details about White's alleged drug deal or the basis for the accusation.

On November 16, Officer O'Donnell and the prosecutor appeared before a state court judge to seek an arrest warrant for several Operation Blue Knight suspects, including White. Officer O'Donnell presented the criminal complaint and testified under oath about White's actions as detailed in the NAGIS Report. The judge issued a warrant to arrest White.

To support his claim that Officer O'Donnell failed to provide the state court with sufficient information to establish probable cause to arrest him, White emphasizes that Officer O'Donnell and the prosecutor could not remember at their depositions in this federal civil case exactly what Officer O'Donnell told the judge about White's participation in the drug deal. Nevertheless, Officer O'Donnell specifically testified: "On November 10, 2010, I signed a criminal complaint against Vonzell White for delivery of a controlled substance based on the 7/31/10 NAGIS report documenting that Vernon Chapman and Vonzell White delivered a controlled substance to the C/I in a covert narcotics purchase on July 31, 2010." He added that the "NAGIS report identifies Vonzell White, a/k/a 'Zebo' and Vernon Chapman a/k/a 'C-Dog' as affiliated with the Traveling Vice Lords and lists both Chapman and White as the offenders who delivered heroin to the C/I on July 31, 2010, in the covert narcotics purchase. Based on my experience and understanding of the incident, I believed the

7/31/2010 NAGIS report set forth sufficient probable cause to secure the arrest of Vonzell White for delivery of a controlled substance." The NAGIS report's account of the controlled buy, if believed, provided sufficient information to find probable cause to arrest White.

C. *Dismissal of Criminal Case and Filing of Civil Suit*

White was arrested on November 17, 2010. He remained in custody until January 5, 2011. On July 21, 2011, prosecutors dismissed the charges against him, apparently because the informant was not available to testify against him.

White then filed this civil suit against both Officer O'Donnell and the City of Chicago alleging that he was arrested in violation of the Fourth and Fourteenth Amendments and was prosecuted maliciously under state law. White contends that Officer O'Donnell knowingly sought an arrest warrant without probable cause. White argues that the sparse description of the offense on the standard complaint form failed to provide the state court judge with sufficient information to find probable cause for the arrest. White also alleges a *Monell* claim against the city for the allegedly widespread practice of seeking arrest warrants on the basis of the conclusory complaint forms. See *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 694–95 (1978) (rejecting respondeat superior liability under 42 U.S.C. § 1983 but allowing claims against local governments for official policies or customs that violate federal rights).

The district court granted the city's motion to dismiss the *Monell* claim for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), finding that the complaint did not allege a sufficient factual basis to believe the alleged

practice was actually so widespread as to support a *Monell* claim. Defendants later moved for summary judgment on the remaining claims. The district court granted summary judgment for Officer O'Donnell on the federal claim for false arrest, finding that he was entitled to qualified immunity, and the court declined to exercise supplemental jurisdiction over the state law malicious prosecution claim. White has appealed.

II. *Fourth Amendment Claim Against Officer O'Donnell*

We first consider summary judgment on the Fourth Amendment claim against Officer O'Donnell as an individual. We review *de novo* a district court's grant of summary judgment. *Miller v. Gonzalez*, 761 F.3d 822, 826 (7th Cir. 2014). We review the evidence in the light reasonably most favorable to the non-moving party—here, plaintiff White. *Id*. We give him the benefit of reasonable inferences from the evidence, *id.*, citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986), but not speculative inferences in his favor, see *Tubergen v. St. Vincent Hosp. and Health Care Center, Inc.*, 517 F.3d 470, 473 (7th Cir. 2008), quoting *McDonald v. Village of Winnetka*, 371 F.3d 992, 1001 (7th Cir. 2004). Summary judgment is appropriate when no genuine dispute of material fact exists and the moving parties are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); see also *Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012). The controlling question is whether a reasonable trier of fact could find in favor of the non-moving party on the evidence submitted in support of and opposition to the motion for summary judgment. See *Sweat v. Peabody Coal Co.*, 94 F.3d 301, 304 (7th Cir. 1996).

White asserts that he was arrested based on an invalid warrant because Officer O'Donnell failed to present sufficient

information to allow the state court judge to evaluate probable cause for arrest. White argues that the bare-bones criminal complaint could not establish probable cause and that the insufficiency was not cured by Officer O'Donnell's testimony because he could not recall his testimony more specifically. Defendants respond that Officer O'Donnell's affidavit and deposition testimony establish that he gave sworn oral testimony about the NAGIS Report. Both sides agree that the NAGIS report contains information sufficient to establish probable cause for White's arrest. White argues that because O'Donnell's testimony to the state court judge was not recorded, there is a genuine issue of material fact about just what he said and thus whether the warrant was issued on the basis of probable cause.[1]

When a plaintiff is arrested pursuant to a facially valid warrant, the plaintiff may prevail on a false arrest claim only if a reasonable officer should have known that the information provided to the judge was insufficient to establish probable cause. *Williamson v. Curran*, 714 F.3d 432, 441–42 (7th Cir. 2013). To succeed on this claim, the plaintiff must demonstrate that the officer knowingly, intentionally, or with reckless disregard for the truth sought a warrant on the basis of legally insufficient information. *Beauchamp v. City of Noblesville*, 320 F.3d 733, 742 (7th Cir. 2003). Of course, the plaintiff may not succeed if the officer did in fact present sufficient

---

[1] While White disputes some of the facts contained in the NAGIS Report, this dispute is immaterial since he does not claim that Officer O'Donnell actually lacked probable cause to seek an arrest warrant.

evidence to "support the independent judgment of a disinterested magistrate." *Whiteley v. Warden, Wyoming State Penitentiary*, 401 U.S. 560, 565 (1971); *Williamson*, 714 F.3d at 442.

This is not a case where an officer sought an arrest warrant solely on the basis of a bare-bones complaint. In fact, we agree with White that the complaint in this case would be insufficient by itself under *Whiteley* because it lacks any factual information about the alleged offense or the basis for the accusation that would allow the judge to make an independent judgment about probable cause. See *Whiteley*, 401 U.S. at 568.

The Fifth Circuit addressed a similar situation in *Spencer v. Staton*, 489 F.3d 658 (5th Cir. 2007), where a Mr. and Mrs. Spencer and one Zinnerman were suspected of being involved with murders in a botched robbery attempt. *Id*. at 660–61. Detectives went to the house where all three were staying and discovered that they had left. *Id*. at 661. Fearing that they were attempting to flee, the detectives obtained arrest warrants for Mr. and Mrs. Spencer and Zinnerman, and they charged Mr. Spencer and Zinnerman with armed robbery and first-degree murder. *Id*. Mrs. Spencer was charged as an accessory after the fact. *Id*. She was acquitted of the accessory charge through a plea deal involving her husband. *Id*. at 661. She then brought a civil suit alleging that the arrest warrant application submitted by the detectives was facially invalid and unsupported by probable cause to arrest her. *Id*.

The district court had granted summary judgment for the detectives on the basis of qualified immunity, but the Fifth Circuit reversed: "After reciting Spencer's biographical and contact information, the affidavit states nothing more than the charged offense, accompanied by a conclusory statement that

Spencer assisted her husband and Zinnerman in evading Louisiana authorities. It does not supply the factual basis for probable cause necessary for issuance of an arrest warrant." *Id*. at 661–62. The lead detective sought to cure this problem by asserting that he supplemented the affidavit with oral testimony "based on his personal knowledge and investigation such that—in the aggregate—the information conveyed to the judge" supported probable cause for Spencer's arrest. *Id*. at 662. There was "significant uncertainty" in the record "concerning what oral testimony" the detective provided to the judge and when. *Id*. at 662. The court concluded that the warrant application to the issuing judge was "a textbook example of a facially invalid, 'barebones' affidavit." *Id*. at 661. The court also noted that the detective did not allege that his statements to the judge were made under oath. *Id*. at 663.

We do not disagree with the analysis or result in *Spencer*, but there are two key differences here. The undisputed facts here show that Officer O'Donnell did not seek the arrest warrant on the complaint alone or on the basis of unsworn oral assertions to the judge. Instead, Officer O'Donnell's uncontroverted deposition testimony establishes that he gave a statement under oath about White "being a named offender in a narcotics transaction" based on the contents of the NAGIS Report, which gave detailed and specific grounds for probable cause that White had been part of an illegal heroin deal. White contends that there is no evidence "about the actual words spoken by O'Donnell," but we see no basis for finding a genuine issue of material fact simply because the testifying officer cannot recount the precise words he spoke to the judge under oath. A police officer seeking a warrant can rely on information from other officers. See *United States v. Williams*, 627

F.3d 247, 252 (7th Cir. 2010) ("The collective knowledge doc‑
trine permits an officer to … arrest a suspect at the direction
of another officer or police agency, even if the officer himself
does not have firsthand knowledge of facts that amount to the
necessary level of suspicion to permit the given action."). It is
undisputed that the NAGIS Report detailed the surveillance
of the drug transaction involving White and that Officer
O'Donnell testified on the basis of that report. His deposition
testimony establishes that he presented sufficient evidence to
the judge to establish probable cause. White has offered no
evidence presenting a genuine issue of material fact.

In his reply brief, White argues that the "procedure" of
seeking arrest warrants on the basis of sworn oral testimony
"may result in distorted subsequent testimony as to what in‑
formation was presented orally"—though White is careful to
note that he does not challenge the constitutionality of the
practice. A written affidavit or recorded testimony would of
course make it easier for an officer to establish the sufficiency
of the evidence presented to a warrant‑issuing judge. But
White cites only authorities dealing with applications for
*search* warrants, not arrest warrants. See, e.g., *United States v.
Clyburn*, 24 F.3d 613, 618 (4th Cir. 1994) (emphasis added). Un‑
like an arrest warrant, which describes a person with particu‑
larity when that person is identified, a search warrant requires
a "particular description of the things to be seized" and the
scope of the location to be searched. *Andresen v. Maryland*, 427
U.S. 463, 480 (1976) (internal quotations omitted). The practi‑
cal concerns about establishing the evidentiary basis for par‑
ticularized descriptions for a search warrant are not as signif‑
icant for arrest warrants, where the officer must show only
probable cause for a person's arrest. While the district court

granted summary judgment for Officer O'Donnell on the basis of qualified immunity, we conclude that he is entitled to summary judgment on the merits of the Fourth Amendment claim against him. The undisputed facts in the summary judgment record show that he provided the state court judge with a sufficient factual basis to support the arrest warrant.

### III. *The Monell Claim of Unconstitutional Practice*

The district court dismissed White's *Monell* claim on the pleadings. *White v. City of Chicago*, 2014 WL 958714 at *2–3 (N.D. Ill. 2014). The court held that White failed to state a *Monell* claim because his claim was "based upon the sole allegation that O'Donnell acted in accordance with a widespread practice of the police department of the City of Chicago when seeking a warrant." *Id*. at *2 (internal citations omitted). This, the court said, was not enough to allow the court to draw the reasonable inference that the City maintained a policy, custom, or practice that deprived him of his constitutional rights. *Id*. This was an error, but a harmless one.

The Supreme Court held in *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 164 (1993), that federal courts may not apply a "'heightened pleading standard'—more stringent than the usual pleading requirements of Rule 8(a) of the Federal Rules of Civil Procedure—in civil rights cases alleging municipal liability under … 42 U.S.C. § 1983." The Court emphasized that "Rule 8(a)(2) requires that a complaint include only a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Id*. at 168; see also *Geinosky v. City of Chicago*, 675 F.3d 743, 748, n.3 (7th Cir. 2012). The *Leatherman* holding has survived the Court's later civil pleading decisions in *Iqbal* and *Twombly*, which require the pleader to allege a "plausible"

claim. See *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

White alleged in his amended complaint: "In accordance with a widespread practice of the police department of the City of Chicago: O'Donnell requested the judge to issue a warrant on the basis of O'Donnell's conclusory allegation that other law enforcement officers claimed or believed plaintiff had committed an offense, and O'Donnell did not present the judge with an affidavit setting out any affirmative allegation of facts that would indicate that plaintiff had committed an offense." Together with the individual claim against O'Donnell and the standard printed form that does not require specific factual support for an application for an arrest warrant, this allegation was enough to satisfy the "short and plain statement of the claim" requirement of Rule 8(a)(2). White was not required to identify every other or even one other individual who had been arrested pursuant to a warrant obtained through the complained-of process. See, e.g., *Jackson v. Marion County*, 66 F.3d 151, 152–53 (7th Cir. 1995).

In the end, however, Officer O'Donnell's sworn testimony about the NAGIS Report provided sufficient evidence to establish probable cause. Probable cause also establishes that White did not suffer a constitutional injury, which is a necessary element of a *Monell* claim. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986). Since White's *Monell* claim fails on other grounds, the error on the sufficiency of the pleading was harmless. See Fed. R. Civ. P. 61.

The judgment of the district court is AFFIRMED.