**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals
**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted July 30, 2019[*]
Decided July 31, 2019

**Before**

ILANA DIAMOND ROVNER, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

MICHAEL B. BRENNAN, *Circuit Judge*

No. 18-3646

| | |
|---|---|
| BECKY L. BISHOP, | Appeal from the United States District |
| *Plaintiff-Appellant,* | Court for the Eastern District of Wisconsin. |
| *v.* | No. 16-CV-1447 |
| PETER BOSQUEZ, et al., | William C. Griesbach, |
| *Defendants-Appellees.* | *Chief Judge.* |

## O R D E R

Officers executing a warrant searched Becky Bishop's property for maltreated horses. Bishop sued them, alleging that the warrant was invalid and that the officers used excessive force against her, in violation of the Fourth and Fourteenth Amendments. *See* 42 U.S.C. § 1983. The case proceeded in two phases. First, the district court entered summary judgment for the defendants on the claim challenging the warrant's validity. Then, following some pretrial rulings, the excessive-force claims went to a bench trial, where the court found that the force was reasonable. Bishop now

---

[*] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

contests (1) summary judgment on the invalid-warrant claim; (2) the adverse pretrial rulings; and (3) the excessive-force finding. We affirm because, with deference to the warrant-issuing judge, the warrant was justified; the pretrial rulings fall comfortably within the trial judge's discretion; and the finding of no unreasonable force was not clearly erroneous.

## I.     Background

We recite the facts in the record, noting where the parties disagree.

### a.  The Search

Peter Bosquez, a Waupaca County police officer, visited Bishop's farm in 2013 to respond to a report that Bishop's horses were malnourished. (Mistreating animals is a crime in Wisconsin.) He saw malnourished horses and fences and stables in disrepair. (Bishop counters that Bosquez never entered her barn.) Bosquez served Bishop with an administrative order requiring her to call a veterinarian for the horses and to repair her fencing. Bishop administratively appealed the order, but the county voted to uphold it.

A month later, Bosquez saw that Bishop's fence had not been repaired, so he obtained a search warrant. In the affidavit supporting the warrant, Bosquez attested to the mistreatment he had observed and that he had completed animal-welfare training. A state judge issued the warrant. It authorized a search of Bishop's property for the seizure of malnourished horses and any paperwork or electronic files about their care. Bosquez, other officers, and Dr. Matt Koltz, a veterinarian, then went to Bishop's home and served her with the warrant. She cracked the door open briefly, but quickly closed and locked it. Bosquez forced the door open and took Bishop to the living room. After assigning two officers to watch her, Bosquez and Dr. Koltz searched the property. They seized Bishop's 22 horses and various documents.

The officers assigned to watch Bishop during the search, Tim Wilz and Kevin Studzinski, ordered her to stay seated on the couch, but Bishop refused. A few times she tried to get up, use the phone and bathroom, and walk about living room, which was cluttered and might have concealed dangerous objects or weapons. The first time that Bishop refused to stay seated, Studzinski pushed her back onto the couch. Another time, Bishop thought that officers outside were aiming a gun at one of her sons (it was actually a taser). When she stood up again, she fought Studzinski's attempt to seat her, so he and Wilz pushed Bishop facedown onto the couch and handcuffed her.

A struggle to handcuff Bishop ensued. According to Studzinski, Bishop was swearing at him and punched him. As Bishop clashed with the officers, her pants became unbuttoned and partially fell down. Bishop says that the officers pulled them and her underwear down and touched her inappropriately. The officers responded that

her pants came down inadvertently and that her underwear never came down. The police then led her from the house to a car outside, using force to lift her because she was "passively resisting." As she resisted, Bishop's pants began to fall down again. Studzinski states that he "hoist[ed]" them up while taking her to the police car.

### b. Litigation

After the search, the State of Wisconsin prosecuted Bishop in state court for failing to lawfully care for her horses. During those proceedings, Bishop challenged the validity of the warrant. The state judge ruled that warrant was valid and sufficiently supported by Bosquez's affidavit. After pleading no contest to the charges, the judge sentenced her to two years of probation. Bishop did not appeal.

This suit followed. As relevant on appeal, Bishop sued Bosquez, and Dr. Koltz and his employer, alleging that the search and seizure were unreasonable and had violated state law. These defendants moved for summary judgment, and the district court granted their motions. Regarding Bishop's challenge to the warrant's validity, it ruled that Bishop had not substantiated her assertion that Bosquez had lied to obtain the warrant. On the claims against Dr. Koltz and his employer, the district court determined that Bishop did not offer evidence suggesting that they contributed to an unlawful search. The court dismissed Bishop's state-law claims against these defendants without prejudice.

Bishop also sued Wilz and Studzinski for using unreasonable force during the search. Those claims survived summary judgment, leading to several pretrial rulings. The district judge granted the defendants' motion to extend discovery to depose Bishop's son because Bishop had not timely provided his contact information. Bishop filed two motions in limine on which the judge deferred ruling. The first sought to bar the defendants from questioning Bishop at trial about her horses. The judge advised Bishop that if he granted the motion, a jury might speculate—adversely to Bishop— about the reason for the search warrant. The second motion sought to bar from trial a summary of the county's investigation into Bishop's administrative complaint against Studzinski and Wilz. The judge wanted more time to assess the summary's relevance. Finally, citing factual disputes, the judge denied a third motion from Bishop in which she sought to tell the jury that she was not "under arrest" when the officers handcuffed her during the search. After these decisions, Bishop waived her right to a jury trial.

At trial, the judge credited the officers' testimony and ruled that they did not use unreasonable force. He bypassed the question whether Bishop was arrested and treated the case as if Bishop was not under arrest and was handcuffed only to facilitate the search. But the judge concluded that the officers used reasonable force because Bishop locked the door when she was served with the warrant, refused to stay on the couch

when she was ordered to do so, and fought the officers when they tried to keep her there. It also rejected the claim that the officers intentionally pulled and left her pants down, finding that Studzinski pulled them up for her when they fell accidentally. The court entered judgment for all defendants and awarded costs. Bishop then filed a motion that the district court construed as a motion for a new trial under Federal Rule of Civil Procedure 59, and the court denied it.

## II.      Analysis

First, a word about the scope of Bishop's appeal: Bishop's new-trial motion was still pending when she filed her notice of appeal. Under Federal Rule of Appellate Procedure 4(a)(4)(B)(i), the judgment became final and came within the scope of her earlier-filed notice once the district court ruled on Bishop's new-trial motion. But we lack jurisdiction to consider Bishop's challenge to that new-trial ruling because she did not file an amended notice to appeal that ruling. FED. R. APP. P. 4(a)(4)(B)(ii).

We similarly do not consider Bishop's challenge (in her appellate brief) to the award of costs. Under the local rules, which even pro se litigants must follow, *see, e.g., Cady v. Sheahan*, 467 F.3d 1057, 1061 (7th Cir. 2006), "[a] party may move for review of the Clerk of Court's decision taxing costs pursuant to Fed. R. Civ. P. 54(d) within 7 days from taxation." E.D. WIS. CIV. R. 54(c); *see also Fidelity and Deposit Co. of Md. v. Edward E. Gillen Co.*, 926 F.3d 318, 328 (7th Cir. 2019). A failure to do so prevents appellate review. *Id.* Bishop objected to the bill of costs, but she did not, as these rules require, ask the district court to review her objections once the Clerk taxed costs; nor did she appeal from the taxation of costs.

### a.  Summary Judgment Regarding the Warrant's Validity

Bishop first argues that in two ways Bosquez lied to obtain the search warrant, rendering it invalid. First, in his affidavit supporting the warrant, he attested that he had completed training about animal treatment, but Bishop insists that he did not complete that training until after he first visited her property. Second, in that affidavit Bosquez also attested that Bishop had not called a veterinarian to examine her horses, but Bishop maintains that she scheduled a herd evaluation for the day before the search. We review de novo a district court's grant of summary judgment, construing the undisputed facts in Bishop's favor. *White v. City of Chicago*, 829 F.3d 837, 841 (7th Cir. 2016). Summary judgment is appropriate when no genuine dispute of material fact exists and the moving parties are entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *White*, 829 F.3d at 841.

Bishop's challenge to the warrant's validity fails. First, the challenge is precluded because a state court already has upheld the warrant against Bishop's previous

challenge. *See* 28 U.S.C. § 1738; *Allen v. McCurry*, 449 U.S. 90, 103–05 (1980). In any event, her challenge is meritless. We afford "great deference" to the decision of the judge who issued the warrant. *United States v. McIntire*, 516 F.3d 576, 578 (7th Cir 2008). And Bishop has offered no evidence showing that Bosquez lied to that judge, so the deference is intact. *See Archer v. Chisholm*, 870 F.3d 603, 615–16 (7th Cir. 2017). Even though Bosquez may not have completed his animal-welfare training until after he first visited Bishop's property, in the warrant application he stated truthfully that he completed the training before seeking the warrant. And nothing in the record suggests that Bosquez knew that Bishop had scheduled a herd evaluation for the day before the search.

Next, Bishop argues that Bosquez exceeded the warrant's scope by (1) searching vehicles in which horses were never kept; and (2) searching a vehicle and seizing horses that belonged to her son. Though she arguably raised these contentions in her complaint, she did not present them at summary judgment, so we need not consider them. *See Fednav Intern., Ltd. v. Continental Ins. Co.*, 624 F.3d 834, 841 (7th Cir. 2010). But for two reasons, they are unavailing anyway. First, the warrant authorized a search of the property for animals *and* records of their treatment, and "officers are entitled to search anywhere the items to be seized might likely be discovered, so long as that is within the place authorized to be searched." *Archer*, 870 F.3d at 617. Because the warrant empowered Bosquez to search the property for paperwork (including electronic files) about the horses' care, he could look any place on the property where documents could have been, including vehicles. *See United States v. Borotowski*, 775 F.3d 851, 864–65 (7th Cir. 2014). Second, because Bishop "admitted that [s]he did not own the horses" or the son's vehicle, she "lacked standing to sue" about those searches and seizures. *Siebert v. Severino*, 256 F.3d 648, 655 (7th Cir. 2001).

Finally, Bishop challenges the district court's decision to dismiss her state-law claims. But the court reasonably declined to exercise supplemental jurisdiction over those claims when it decided Bishop's federal claims against Bosquez at summary judgment. 28 U.S.C. § 1367(a), (c)(3); *Coleman v. City of Peoria*, 925 F.3d 336, 351–52 (7th Cir. 2019).

### b. Trial – Officers Tim Wilz and Kevin Studzinski

### i. Pretrial Motions

Bishop contests three pretrial decisions. She first argues that by delaying ruling on two of her motions in limine until trial, the court "forced" her to waive her right to a jury because she feared that adverse rulings on these motions could prejudice the jury. District courts have broad discretion to make and alter pretrial evidentiary rulings before and during trial. *Perry v. City of Chicago*, 733 F.3d 248, 252 (7th Cir. 2013). A court that delays ruling on a motion in limine until trial might abuse its discretion if it did not prepare the parties for the ruling. *See, e.g., Pena v. Leombruni*, 200 F.3d 1031, 1034–35 (7th Cir. 1999). But that is not the case here. The court reasonably deferred ruling on

Bishop's request to block questions about her horses because it advised her to consider if she wanted a jury to speculate about the basis for the search warrant. And the court properly delayed ruling on whether to admit the report of Bishop's administrative complaint against Studzinski and Wilz because its relevance was uncertain. *See Perry*, 733 F.3d at 252. Finally, the court reasonably left for trial the question whether Bishop was under arrest during the search: her "arrest" status was contested, and different standards govern the use of force for detentions incident to a search warrant and for those incident to an arrest. *Compare Muehler v. Mena*, 544 U.S. 93, 98–100 (2005) (search warrant) *with Graham v. Connor*, 490 U.S. 386, 396–97 (1989) (arrest).

Bishop also challenges the court's decision to extend the discovery deadline so that the defendants could take her son's deposition. But an extension was well within the court's broad discretion over "matters of trial management," *Griffin v. Foley*, 542 F.3d 209, 217 (7th Cir. 2008), given that Bishop had refused to provide her son's contact information earlier.

### ii.   Sufficiency of the Evidence

Finally, Bishop argues that the evidence at trial compels the conclusion that Studizinski and Wilz used excessive force. She emphasizes that the officers admitted that her pants were partially down during the search and they would not let her pull them up, make any phone calls, go to the bathroom, or leave the couch after she thought that officers had drawn a gun on her son. We review for clear error the trial judge's findings that the officers' use of force was reasonable. *See* FED. R. CIV. P. 52(a)(6); *Wilborn v. Ealey*, 881 F.3d 998, 1004, 1006–07 (7th Cir. 2018).

To determine whether police used excessive force when executing a search warrant on a civilian, a trier of fact examines "whether the officers' actions were objectively reasonable in light of the totality of the circumstances." *Flournoy v. City of Chicago*, 829 F.3d 869, 874 (7th Cir. 2016). The factfinder assesses reasonableness from the perspective of an officer on the scene, recognizing that officers often must make split-second decisions. *Id*. at 874. When a person forcefully and persistently refuses to comply with lawful orders to submit to a search, the police may use force reasonably calculated to achieve compliance. *See Muehler*, 544 U.S. at 98–100; *Smith v. Ball State Univ.*, 295 F.3d 763, 770–71 (7th Cir. 2002).

For several reasons, the district court did not clearly err in finding that the force applied to Bishop was reasonable. First, Bishop disobeyed lawful orders. She ignored orders to let the police in her home to execute the warrant and to remain seated during the search. Second, *she* used force: she locked the police out and punched them when they tried to seat her. Third, her resistance led them to worry understandably about

their safety and the search. The clutter in Bishop's living room might conceal a weapon that Bishop could use to harm them or interfere with the search, and this reasonable fear justified their use of force to handcuff her, even if that her kept her from using the phone or bathroom. *See Los Angeles Cty. v. Rettele*, 550 U.S. 609, 614–16 (2007); *Muehler*, 544 U.S. at 98–100. Fourth, the police did not use force beyond that needed to handcuff her for their safety: the district court permissibly accepted as more credible the officers' testimony that they did not deliberately pull her pants down and that they pulled the pants up as they moved her to the car. *See Anderson v. Bessemer City*, 470 U.S. 564, 574 (1985) ("Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous."). Finally, Bishop's concern that the police held her son at gunpoint did not disable the police from keeping her immobilized for their safety and to complete the search. "When officers execute a valid warrant and act in a reasonable manner to protect themselves from harm … the Fourth Amendment is not violated." *Rettele*, 550 U.S. at 616.

We have considered Bishop's remaining arguments, and none has merit. We therefore AFFIRM the judgment.