NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted October 6, 2021[*]
Decided October 7, 2021

**Before**

ILANA DIAMOND ROVNER, *Circuit Judge*

MICHAEL B. BRENNAN, *Circuit Judge*

MICHAEL Y. SCUDDER, *Circuit Judge*

No. 20-3123

| | |
|---|---|
| BOBBY BROOKER, *Plaintiff-Appellant*, | Appeal from the United States District Court for the Northern District of Illinois, Western Division. |
| *v.* | No. 18 C 50111 |
| JAMES ABATE and JACOB MARINO, *Defendants-Appellees*. | Iain D. Johnston, *Judge*. |

## O R D E R

While executing a search warrant at Bobby Brooker's home, a police officer shot and killed his pit bull. Brooker sued two officers who carried out the search, believing

---

[*] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

that the manner of the search violated his rights under the Fourth Amendment. *See* 42 U.S.C. § 1983. The district court entered summary judgment for the defendants, concluding that no reasonable jury could find they acted unreasonably. We affirm.

James Abate, a deputy sheriff with the Winnebago County Sheriff's Department, obtained a warrant to search Brooker's apartment after a confidential informant told him that "Bobby" was selling crack cocaine there. The informant also told Abate that a "vicious pit bull" inside the apartment was being used as a guard dog.

A team of nine officers with the Department's Narcotics Unit executed the warrant the morning after it was issued. Deputy Jacob Marino was given a shotgun in case the dog posed a danger to the officers. Abate, who was leading the raid, chose not to involve the Winnebago County Animal Services Department because their personnel are not trained to participate in raids involving potentially armed suspects and their presence could have compromised the element of surprise. An officer knocked and announced the police presence twice and, after receiving no reply, forced the door open with a battering ram.

Marino was the first officer to enter and immediately encountered Brooker's dog, a 70-pound pit bull. The dog moved from the living room to a bedroom. (Marino says the dog was aggressively barking at him from the moment he entered, but Brooker disputes that account, and we construe the record in his favor. *See Reid v. Balota*, 962 F.3d 325, 327 (7th Cir. 2020).) Before carrying out the search, Marino needed to clear the bedroom for safety reasons to ensure that no one was hiding there. When he approached the doorway, the dog charged at him. Fearing for his safety as the dog closed to within four or five feet, Marino fired one shotgun round and struck the dog. The dog then jumped on the bed and again lunged at Marino, who fired a second shot from about three feet away. The dog died shortly afterwards.

Brooker, who was seated on the couch in the living room adjacent to the bedroom, testified that he did not have a clear view when Marino shot the dog. Before Marino's first shot, Brooker was looking from his seat on the couch to see where the dog was, but "the only thing [he] could see was the tip of [his] dog's nose that was coming out from the other side of the dresser." He did not see the second shot at all because after the first shot his "eyes filled with [tears]."

When the raid began, Brooker was wearing only pants and socks, and no shirt. Although the heat in the apartment was on, the apartment had gone cold as a result of

sub-freezing temperatures outside and the back door being rammed open during the police entry. After he was handcuffed, Brooker asked Abate for a shirt or jacket, but Abate (who had entered the apartment some time after Marino shot the dog) replied "not right now." At some point, another officer took Brooker's photograph, in accordance with Department policy. Brooker asked for a shirt multiple times but was ignored, and he remained shirtless for about 45 to 60 minutes. An officer finally gave him a jacket before taking him outside to the squad car to take him to the station. (The officers found drugs in the apartment, and Brooker eventually pleaded guilty to possessing cocaine with intent to distribute.)

Believing that the manner of the search was unreasonable, Brooker sued Abate and Marino for violating his Fourth Amendment rights. *See* 42 U.S.C. § 1983. Brooker argued that Marino's decision to kill his dog was unreasonable because he was not behaving aggressively. Brooker also argued that Abate, who had advance notice that a potentially aggressive dog would be present, acted unreasonably by not preparing a non-lethal plan to handle the dog. Finally, Brooker contended that the decision to leave him without a shirt during the search, and to photograph him in that state, violated his rights because he was "shaking from the cold" and "felt degraded being partly nude in front of females."

After denying Brooker's requests to recruit counsel to assist him, the district court entered summary judgment for the defendants, concluding that no reasonable jury could find that they acted unreasonably. As the court explained, the evidence was undisputed that the dog posed an immediate threat to Marino's safety and that the use of force was unavoidable under the circumstances. The court, noting Brooker's admission that he did not have a clear view of his dog at the time of the shooting, found his statements insufficient to create a fact question about whether the dog charged Marino aggressively. As to whether the shooting was avoidable, the court found no evidence to suggest that—given the short time available to plan the raid—a less intrusive plan for handling the dog could have been developed. On this basis, the court distinguished a Ninth Circuit decision, *San Jose Charter of Hells Angels Motorcycle Club v. City of San Jose*, 402 F.3d 962 (9th Cir. 2005), concluding that officers who had a week's time to plan for a raid had acted unreasonably in shooting the plaintiffs' dogs. As for Brooker's claim about his shirtless state during the search, the court noted that it had not given him leave to proceed on that claim at screening, *see* 28 U.S.C. § 1915A, and, regardless, the record showed the manner of the search was reasonable.

On appeal, Brooker first challenges the court's conclusion that no jury could find that Marino acted unreasonably by shooting his dog. He argues that a factual dispute exists over whether the dog was actively threatening Marino when Marino fired the first shot.

The killing of a companion dog is a "seizure" under the Fourth Amendment, so the officers' actions were constitutional only if reasonable. *Viilo v. Eyre*, 547 F.3d 707, 710 (7th Cir. 2008). The use of deadly force against a pet is reasonable "only if the pet poses an immediate danger and the use of force is unavoidable." *Id.*

Under the circumstances, no jury could conclude that Marino behaved unreasonably. Brooker admitted that he could not see more than the "tip of [his] dog's nose" before the shooting, so he cannot raise a fact question about the dog's demeanor before the dog was shot. Marino's uncontradicted testimony that he shot the dog lunging at him just feet away shows that the use of force was unavoidable.

Brooker maintains that the court erred by rejecting his argument that the officers should have developed a different entry plan to safely handle the dog without killing it. He urges that a jury could find that the officers could have avoided killing the dog if they had prepared a less "reckless" plan.

But we agree with the district court that no jury could find that the shooting was avoidable. The record shows that the officers executed the warrant less than a day after it was issued and that they considered involving Animal Services but chose not to do so because their involvement would be dangerous. These facts distinguish this case from *Hells Angels*, where the Ninth Circuit determined that the officers—who had advance knowledge of the dogs and a week's time to plan for the raid—acted unreasonably by failing to develop a non-lethal strategy for incapacitating the dogs so that they could carry out the search. 402 F.3d at 966.

Brooker also argues for the first time on appeal that the other officers involved in the raid can be liable for failing to intervene to prevent the shooting. He waived this argument, however, by failing to raise it in the district court. *See Johnson v. Dominguez*, 5 F.4th 818, 826 (7th Cir. 2021). And, regardless, the record shows that Abate—the only other named defendant—was outside the apartment at the time of the shooting, and nothing in the record presents any reason to believe that he could (or should) have intervened.

Next, Brooker argues the district court should have allowed him to proceed on his claim based on the officers leaving him shirtless and photographing him in that state during the search. But here too, nothing in the record reflects that the police acted unreasonably while executing a valid search warrant. *See Los Angeles Cnty., California v. Rettele*, 550 U.S. 609, 614 (2007) (noting that unreasonable actions include use of excessive force or unnecessarily painful restraints). Given his acknowledgment that the heat was on in his apartment and that the officers gave him a jacket before taking him outside, we see no basis to believe that it was constitutionally impermissible for the officers to leave Brooker dressed as they found him while securing and searching the premises. *See id.* at 614–15 (officers acted reasonably in making couple found naked in bed stand nude for several minutes while officers secured the room before allowing them to dress). Even if we assumed that being shirtless were intrusive enough to merit constitutional scrutiny, Brooker has not alleged that the officers left him in that state any longer than necessary to complete the search. *Id.* at 615. Further, Brooker admits that neither of the two defendant officers took his photograph.

Finally, Brooker argues the court erred by denying his motions to recruit counsel. But the court acted within its discretion to deny his requests. *See Pruitt v. Mote*, 503 F.3d 647, 658 (7th Cir. 2007) (en banc). The court considered Brooker's requests and reasonably determined that, given the case's relative difficulty, he was competent to litigate it himself. *See id.*

AFFIRMED