**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 20-3278

_____

MARCUS ROSSER,
Appellant

v.

THOMAS DONOVAN; DETECTIVE JOHN MIKUS;
DETECTIVE THOMAS ORZECHOWSKI; ERIC CHRISTOPHER;
TIMOTHY COLLINS; JEFFREY GEORTLER

_____

On Appeal from the United States District Court
for the District of Delaware
(D.C. Civil Action No. 1-16-cv-00381)
District Judge:  Honorable Maryellen Noreika

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
October 7, 2021

Before: JORDAN, MATEY and NYGAARD, <u>Circuit</u> <u>Judges</u>

(Opinion filed: November 1, 2021)

_____

OPINION[*]

_____

PER CURIAM

      Marcus Rosser, a prisoner proceeding pro se and in forma pauperis, appeals the

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

District Court's order granting summary judgment in favor of six law enforcement defendants. For the following reasons, we will vacate in part, affirm in part, and remand the case for further proceedings.

I.

In July 2014, New Castle County Police arrested Rosser as a suspect in a non-lethal shooting and placed him in a holding room at police headquarters around 12:45 a.m., with no handcuffs or other restraints. After obtaining a search warrant for Rosser's DNA and possible gunshot residue, Corporal Donovan, Officer Geortler, and Detectives Mikus and Orzechowski went to the holding room at 5:40 a.m. to execute the warrant. When they opened the door, Rosser stood in the doorway and asked why he was being detained. Mikus, holding the evidence collection vials, told him to sit down. Rosser refused to do so until he was told why he was detained. As Mikus turned to put the vials down, Donovan stepped into the doorway, coming face-to-face with Rosser. Donovan told him to sit down, and Rosser again refused.

The confrontation then became physical. Donovan tried to bring Rosser to the ground with a headlock. Geortler struck Rosser in the knees, which did not take him down. Donovan then pulled Rosser through the doorway and into a desk outside the room. All four officers attempted to control Rosser's movements and place him in handcuffs. Mikus held Rosser down with his hands, and Donovan struck Rosser multiple times with a closed fist around the face, head, and torso. Mikus also struck Rosser in the torso. Eventually, Mikus and Orzechowski got a set of handcuffs on Rosser, and in the

2

struggle the handcuffs became very tight. They also shackled Rosser's legs and placed a spit hood on his head after he spit blood on the floor.

Rosser remained prone and covered with the spit hood until an ambulance arrived and an EMT made a preliminary examination. Rosser was then taken to Christiana Care Hospital. When placed on the stretcher, Rosser asked that his handcuffs be loosened, but they were not. Officer Collins and Detective Christopher rode in the ambulance with Rosser and accompanied him throughout his examination at the hospital. Rosser's handcuffs were never removed while he was at the hospital, although the spit hood was removed at some point. Photographs taken both at the hospital and after his return to police headquarters show Rosser with swelling around his right eye, a swollen and broken lip, a bloodied nose, and some injuries to his wrists. Rosser was later taken to the Howard R. Young Correctional Institution, where he did not report the incident or tie it to his injuries, despite being seen by the medical staff at intake and the next day.

At Rosser's trial in the Superior Court of New Castle County, he was convicted of various assault and weapons offenses related to the shooting but acquitted of resisting arrest and offensive touching for the events at police headquarters.[1]

Rosser initiated this section 1983 action in May 2016, alleging excessive force by Donovan, Geortler, Mikus, and Orzechowski, and a failure by Collins and Christopher to

---

[1] See State v. Rosser, 2018 WL 6432985, at *1 (Del. Super. Ct. Nov. 26, 2018), report accepted, 2018 WL 6721365 (Del. Super. Ct. Dec. 20, 2018), aff'd, 221 A.3d 915 (Del. 2019).

intervene or protect him. After the close of discovery, defendants collectively moved for summary judgment, primarily arguing that they were protected by qualified immunity because any force they had used was objectively reasonable. The District Court granted their motion, and Rosser timely filed a notice of appeal.

## II.

We have jurisdiction pursuant to 28 U.S.C. § 1291, and exercise plenary review over a district court's grant of summary judgment. Blunt v. Lower Merion Sch. Dist., 767 F.3d 247, 265 (3d Cir. 2014). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists if the evidence is sufficient for a reasonable factfinder to return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In evaluating a motion for summary judgment, "all justifiable inferences are to be drawn in . . . favor" of the non-moving party, id. at 255, and "[i]n qualified immunity cases, this usually means adopting . . . the plaintiff's version of the facts," Scott v. Harris, 550 U.S. 372, 378 (2007). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, . . . [when] ruling on a motion for summary judgment . . . ." Anderson, 477 U.S. at 255.

## III.

"Police officers, embodying the authority of the state, are liable under § 1983 when they violate someone's constitutional rights, unless they are protected by qualified

immunity." Curley v. Klem, 499 F.3d 199, 206 (3d Cir. 2007). In assessing qualified immunity, a court asks "(1) whether the officer violated a constitutional right, and (2) whether the right was clearly established, such that 'it would [have been] clear to a reasonable officer that his conduct was unlawful.'" Lamont v. New Jersey, 637 F.3d 177, 182 (3d Cir. 2011) (alteration in original) (quoting Saucier v. Katz, 533 U.S. 194, 202 (2001)). A court may address the steps in either order. See Pearson v. Callahan, 555 U.S. 236 (2009). Here, the District Court held that the officers did not violate Rosser's constitutional rights and therefore did not reach the question whether those rights were clearly established.

The District Court considered the officers' use of force under the Fourth Amendment, because they were seeking to execute a search warrant, see Los Angeles Cnty. v. Rettele, 550 U.S. 609, 614 (2007); Graham v. Connor, 490 U.S. 386, 396–97 (1989), and under the Fourteenth Amendment's Due Process clause, because Rosser was a pretrial detainee, see Kingsley v. Hendrickson, 576 U.S. 389, 397 (2015). The District Court determined that "[t]he reasonableness factors under the Fourth Amendment are the same as those under the Due Process clause for pretrial detainee claims." Mem. 12, ECF No. 151 (citing Graham, 490 U.S. at 396).

Rosser argues that only the Fourth Amendment standard should apply, because at the time of the incident he was merely an arrestee and had not yet had a probable cause hearing. We need not resolve that question because, for an arrestee like Rosser, "[w]hatever the source of law, in analyzing an excessive force claim, a court must

5

determine whether the force was objectively unreasonable in light of the facts and circumstances of each particular case." Lombardo v. City of St. Louis, Missouri, 141 S. Ct. 2239, 2241 n.2 (2021) (per curiam) (internal quotation marks omitted) (citing Kingsley, 576 U.S. at 397); see also Jacobs v. Cumberland Cnty., 8 F.4th 187, 195 n.6 (3d Cir. 2021) ("Although the factual scenarios in the two contexts may differ, the Fourteenth Amendment standard is now almost identical to the Fourth Amendment standard." (citations omitted)). The factors to consider include: (1) the relationship between the need for the use of force and the amount of force used; (2) the extent of the plaintiff's injury; (3) any effort made by the officer to temper or to limit the amount of force; (4) the severity of the security problem at issue; (5) the threat reasonably perceived by the officer; and (6) whether the plaintiff was actively resisting. Kingsley, 576 U.S. at 397 (citing Graham, 490 U.S. at 396).

i.      Tackling and Beating

Regarding the incident when the officers brought Rosser to the ground, Rosser asserts that the District Court did not carefully address the relevant factors, construed facts and drew inferences in the movants' favor rather than his, and inappropriately made credibility determinations and weighed the evidence. We agree to the extent that it appears the District Court employed a subjective rather than objective test under the fifth

6

factor, resolved a dispute of material fact over Rosser's resistance under the third and sixth factors, and favored the movants' version of events.[2]

In evaluating the fifth factor, the District Court said it was "undisputed that Mikus perceived Rosser's actions as physically threatening and that he believed Rosser was going to push him." Mem. 13. In assessing the use of force, however, Mikus's perceptions are not dispositive. The standard is objective: "the perspective of a reasonable officer on the scene." Graham, 490 U.S. at 396; see also Kingsley, 576 U.S. at 403–04. The District Court here did not apply that standard; nor did it construe the facts in Rosser's favor.

In analyzing the third and sixth factors, the District Court appears to have resolved disputes of fact and drew inferences against Rosser about any resistance. For the third factor, the Court stated that "as to any effort made by officers to temper or to limit the amount of force, the record reflects that Rosser refused commands to stop fighting, stop resisting, place his hands behind his back, and to calm down." Mem. 13. Concerning the sixth factor, "as to whether Rosser was actively resisting, the contemporaneous Use of Force Reports indicate that he was, although Rosser testified that he could not remember

---

[2] As for the other factors, the District Court's analysis of the first factor spoke to the need for some quantum of force, but not whether the amount of force used was rationally related to the officers' stated purpose. See Kingsley, 576 U.S. at 398. For the second factor, we merely note that "de minimis injuries do not necessarily establish de minimis force." Smith v. Mensinger, 293 F.3d 641, 649 (3d Cir. 2002). And as to the fourth factor, it is undisputed that Rosser was unsecured in the holding room; the District Court's passing mention does not reveal what role this fact played in the analysis, thus we cannot say whether resulting inferences were drawn inappropriately against Rosser.

7

what happened after he refused commands to back away from the door, and his later filed affidavit states that he did not resist." Id. at 13–14.

The District Court's statement that "Rosser testified that he could not remember what happened," only partly accounts for the record. Rosser made some equivocal statements in his deposition like "I believe," and "I just remember," but his account largely matches his subsequent affidavit. Compare Redacted App. 110–20, ECF No. 142 (deposition transcript), with Aff. 3–4, ¶¶ 4, 5, 13, ECF No. 145-1. We also note that use-of-force reports reflect the subjective impressions of law enforcement officers; though properly considered in the summary judgment context, they are due no more weight when offered by movants who prepared them than are the affidavits of non-movants. Cf. Clark v. Clabaugh, 20 F.3d 1290, 1294–95 (3d Cir. 1994) (allowing a police report to establish genuine issues of material fact when offered *against* members of the department that prepared it, and when "authors of the Report were not and are not now parties to the litigation").

The officers maintain that, in any case, Rosser has not established a genuine issue of material fact, because the photographs and medical records from the hospital visit after the incident are objective evidence that disproves Rosser's version of events and instead reflect the use of reasonable force. We disagree. The photographs show that Rosser arrived at the hospital barefoot, with his face cut, swollen, and streaked with dried blood. See ECF No. 142 at 199–202. The force that caused those injuries may have been reasonable but, without more, the photographs and medical records are not evidence,

conclusive or otherwise, that it was.

It is beyond dispute that Rosser was unarmed, outnumbered, and detained. The officers do not allege that Rosser resisted when they first took him into custody. Their decision to leave him unsecured for five hours suggests that he was compliant until this confrontation in the doorway. The officers admit to pulling Rosser to the ground and striking him repeatedly. They defend their actions by alleging that Rosser was combative, threatening, and noncompliant. Rosser concedes that he refused to back away from the door but insists that he was not combative.[3] Rosser's accounts do not seem to be so inconsistent, vague, or refuted by the record as to warrant summary judgment for the officers. See Scott, 550 U.S. at 380; Anderson, 477 U.S. at 255.

Given the totality of the circumstances, the District Court should not have concluded as a matter of law that the use of force was objectively reasonable. See Curley, 298 F.3d at 278 ("[A] decision on qualified immunity will be premature when there are unresolved disputes of historical fact relevant to the immunity analysis."); cf. Abraham v. Raso, 183 F.3d 279, 290 (3d Cir. 1999) ("[R]easonableness under the Fourth Amendment should frequently remain a question for the jury."). Accordingly, we will vacate the

---

[3] We disagree with Rosser that his acquittal on charges of resisting arrest and offensive touching related to this incident should be dispositive. See Williams v. Brooks, 809 F.3d 936, 945 (7th Cir. 2016) ("Evidence of acquittal in a criminal action is generally irrelevant and inadmissible in a civil case involving the same incident . . . ." (citation omitted)). Nonetheless, Rosser's consistent version of the facts, on its own, is sufficient to carry his burden at this stage. See Scott, 550 U.S. at 378.

District Court's grant of summary judgment as to these four defendants on this claim.[4]

ii.    Handcuffs

We agree with the District Court that Rosser failed to establish a genuine issue of material fact regarding his claim that his handcuffs were so tight as to amount to a constitutional violation. Clearly, "restraints that cause unnecessary pain" can amount to excessive force. Rettele, 550 U.S. at 614; see also Kopec v. Tate, 361 F.3d 772, 777–78 (3d Cir. 2004). But Rosser's complaint, deposition, statement of material facts, and affidavit all contain contradictory and inconsistent stories that cannot rise to the level of specific evidence from which a reasonable factfinder could render judgment in his favor. See Anderson, 477 U.S. at 248.

iii.    Failure to Intervene

The District Court granted summary judgment in favor of Officer Collins and Detective Christopher for two reasons: (1) Rosser waived the issue because he did not address it in his reply brief; and (2) Rosser's rights were not violated by the other defendants, so Collins and Christopher had no reason to intervene. We will affirm, but on other grounds. See TD Bank N.A. v. Hill, 928 F.3d 259, 270 (3d Cir. 2019). ("[We] may affirm on any basis supported by the record, even if it departs from the District Court's rationale.").

_____

[4] We cannot affirm on the second prong of the qualified immunity analysis, because the rights allegedly violated here were clearly established at the time of the incident. Cf. Giles v. Kearney, 571 F.3d 318, 327 & n.4 (3d Cir. 2009) (finding it clearly "established that an officer may not kick or otherwise use gratuitous force against an inmate who has

10

"[A] police officer has a duty to take reasonable steps to protect a victim from another officer's use of excessive force," but "is only liable if there is a realistic and reasonable opportunity to intervene." Mensinger, 293 F.3d at 650–51. Collins and Christopher were entitled to summary judgment because Rosser has not shown that they had a realistic and reasonable opportunity to intervene. They did not arrive on the scene until Rosser was placed in the ambulance and taken to the hospital. As detailed above, Rosser made inconsistent assertions about when and to whom he complained about the handcuffs. Even liberally construing his claims against these officers to include the handcuff claim, we cannot find a genuine issue of material fact as to their ability to intervene. Thus, we will affirm the District Court's grant of summary judgment as to Collins and Christopher.

## IV.

In conclusion, we will vacate the District Court's grant of summary judgment as to defendants Donovan, Mikus, Orzechowski, and Geortler on Rosser's claim of excessive force arising out of the physical confrontation, we will affirm as to the claim about the tightness of the handcuffs and as to defendants Christopher and Collins, and we will remand the case for further proceedings consistent with this opinion.[5]

---

been subdued"); Couden v. Duffy, 446 F.3d 483, 497 (3d Cir. 2006).

[5] Rosser also challenges the District Court's rulings related to his subpoenas for video evidence of the incident. We "review a district court's discovery orders for abuse of discretion, and will not disturb such orders without a showing of actual and substantial prejudice." Cyberworld Enter. Techs., Inc. v. Napolitano, 602 F.3d 189, 200 (3d Cir. 2010). Because it does not appear from the record that there is any video evidence

available, the District Court did not abuse its discretion in denying Rosser's requests.