**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

————————————————

No. 25-10929

Non-Argument Calendar

————————————————

LATONYA GRIFFIN,

*Plaintiff-Appellant,*

*versus*

ERIC ADEN,
RAPHEAL BROWN,
GRADY CARPENTER,

*Defendants-Appellees.*

————————————————

Appeal from the United States District Court
for the Northern District of Florida
D.C. Docket No. 3:23-cv-23988-TKW-ZCB

————————————————

Before JORDAN, ROSENBAUM, and KIDD, Circuit Judges.

PER CURIAM:

Latonya Griffin appeals the district court's grant of summary judgment on her civil-rights action under 42 U.S.C. § 1983 and state law against Sheriff Eric Aden, in his official capacity, and Deputies Rapheal Brown and Grady Carpenter, in their individual capacities. Griffin's claims arise from the execution of a search warrant at her home in August 2019, during which she was ordered outside fully nude and detained for approximately 40 minutes before being allowed to dress. She alleged that the circumstances of her detention were unreasonable and violated the Fourth Amendment and her right to bodily privacy, and that the Sheriff is liable for the unreasonable nude seizure under state law. The district court granted summary judgment to Defendants, concluding that the deputies did not violate Griffin's constitutional rights or violate clearly established law. Griffin appeals.

After careful review, we affirm in part and vacate and remand in part. We hold that a reasonable jury could find that Griffin's right to bodily privacy was violated during the execution of the search warrant, and that Defendant Carpenter, the supervising deputy who oversaw Griffin's detention, is not entitled to qualified immunity. We affirm the grant of qualified immunity to Defendant Brown, whose role in Griffin's detention was much more limited. Finally, we vacate the grant of summary judgment to the Sheriff, for reasons explained in more detail below.

**I.**

The record includes footage from multiple bodycam videos. We recount the facts "in the light depicted by the video[s]." *Scott*

*v. Harris,* 550 U.S. 372, 381 (2007).  Where the video evidence is not clear, we construe the facts in the light most favorable to Griffin. *Baxter v. Santiago-Miranda,* 121 F.4th 873, 883 (11th Cir. 2024).

At dawn on August 29, 2019, Griffin was asleep upstairs in her home with her two minor children and boyfriend, Tony Streeter, when she awoke to loud banging noises at the front door. Griffin attempted to wake Streeter, who did not respond, and then left the bedroom unclothed.

Meanwhile, at around 5:45 a.m., an interagency task force led by the Oskaloosa County Sheriff's Office used a battering ram to force open Griffin's front door.  Approximately fifteen law-enforcement officers had come to execute a search warrant targeting Streeter, whom they suspected of selling drugs from the home. The deputies supervising the search included Investigator Brown and Lieutenant Carpenter, defendants here, as well as Sergeant Michael Rader.  Brown was the lead case agent.  He prepared the search warrant and coordinated the search, while Defendant Carpenter was the on-site search supervisor.

As Griffin reached the top of the stairs, she saw the deputies at the threshold, with guns drawn and flashlights illuminated, and heard orders to come down to the front door.  A deputy announced that Griffin was not wearing any clothes.  Griffin complied with orders to walk outside, but she loudly objected to being outside naked.

When Griffin exited the residence at approximately 5:47 a.m., Carpenter saw that she was naked and asked for a covering

to give her—a "towel" or "clothes" or "anything"—before directing her to stand behind a patrol car to stay out of sight. Another deputy gave Griffin a yellow, reflective jacket from the trunk of the car.[1] Carpenter said, "that'll work," and then turned his attention back to the house. Griffin put on the waist-length jacket, which went to the top of her hip, did not cover her genitalia or buttocks, and "did not fit," according to Griffin. At this time, it was still mostly dark outside.

Meanwhile, Griffin's 14-year-old son had exited the residence, and Carpenter directed him to stand by his mother. Griffin's son testified that his mom's "whole body was exposed" and he tried to shield her from view. He said that the rain jacket was "small" and that her breasts and buttocks remained exposed. Several minutes later, deputies went upstairs and brought Griffin's 6-year-old daughter outside to join her.

Griffin and her children were placed together in the back of a patrol car and taken to the parking lot of a public shopping plaza close to the residence. The plaza was located on Wright Parkway, a public road. They remained in the patrol car until approximately 6:20 a.m.

"While in the rear of the patrol car," Griffin testified, "the jacket was removed, and [she] was left completely naked again with [her] children seated to [her] left." Griffin's son likewise said

---

[1] Body camera footage contradicts Griffin's testimony that she was exposed in her driveway for approximately 15 to 20 minutes before being given the jacket.

that, when they were in the patrol car, Griffin "did not have anything around her." Body-cam footage shows her in the car without the jacket on, with several deputies standing around the car. And even assuming she had the jacket, as she indicated at her deposition, her lower body remained uncovered. Griffin also saw passersby looking at her and her children in the patrol car, and she attempted to slump down to avoid being seen. Griffin was not allowed to use the restroom and urinated on herself.

Meanwhile, Streeter remained inside the home and did not respond to repeated police commands. He was eventually taken into custody in his bedroom after being tased, at approximately 6:07 a.m. The deputies dressed him in shorts and then took him downstairs at approximately 6:10 a.m.

At approximately 6:19 a.m., the patrol car containing Griffin and her children returned and parked just off the main road, at the entrance to the access road for Griffin's and nearby homes. Griffin was instructed to exit while an officer held up a white fitted sheet for her to wrap herself in. Griffin testified that the sheet was "transparent" but that it provided more coverage than the jacket. She sobbed as she walked back towards her home.

Once inside, Griffin, still wearing only the fitted bed sheet, was instructed to sit on a couch by her children while Brown read the search warrant aloud. Body-cam footage shows the reflective jacket on the floor at Griffin's feet. After the reading of the warrant was finished, Griffin was finally allowed to dress, accompanied by a female deputy, at approximately 6:26 a.m.

6                        Opinion of the Court                    25-10929

**II.**

Griffin sued Sheriff Aden, Investigator Brown, and Lieutenant Carpenter in federal court, alleging that they had conducted an unreasonable seizure that violated her privacy rights under the Fourth Amendment. The operative amended complaint alleged the following three counts: a vicarious-liability claim against the Sheriff in his official capacity under Fla. Stat. § 768.28 (Count I); an unreasonable-seizure claim against Brown in his individual capacity under § 1983 (Count II); and a supervisory-liability claim against Carpenter under § 1983 (Count III).

The district court granted summary judgment to Defendants on all three claims. The court generally found that Defendants did not violate Griffin's right to bodily privacy. The court reasoned that deputies were aware of the need to protect Griffin's privacy, and they took reasonable steps to ensure that her naked body was not exposed longer than necessary while they secured the home to execute the search warrant. The court also found that both Brown and Carpenter were entitled to qualified immunity because Griffin had not identified any case with "remotely similar facts" that would have put them on notice that their conduct violated Griffin's rights.

As for the Sheriff, the district court found that the "unreasonable seizure" claim alleged in the amended complaint, to the extent it was based on a "constitutional tort," was not cognizable under Florida law. The court rejected Griffin's reliance on a negligence theory, reasoning that it was not properly raised in the operative complaint, and that, even if it was, summary judgment was

appropriate because the deputies took reasonable steps to protect Griffin's privacy in connection with the execution of the search warrant. Griffin appeals.

### III.

Qualified immunity protects government employees from individual liability for discretionary conduct unless they violate clearly established law of which a reasonable person would have known. *Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010). The qualified-immunity inquiry "turns on the objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken." *Pearson v. Callahan*, 555 U.S. 223, 244 (2009) (quotation marks omitted).

Officials invoking qualified immunity must show first that they were acting within the scope of their discretionary authority. *Sebastian v. Ortiz*, 918 F.3d 1301, 1307 (11th Cir. 2019). There is no dispute that Defendants Brown and Carpenter were engaged in discretionary duties on the morning of August 29, 2019. Griffin therefore has the burden to show that qualified immunity does not apply. *See id.*

To meet this burden, the plaintiff must establish that "(1) the defendant violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation." *Miller v. Palm Beach Cnty. Sheriff's Office*, 129 F.4th 1329, 1333 (11th Cir. 2025). Whether qualified immunity applies must be decided "on a claim-by-claim and defendant-by-defendant basis." *Id.* "The salient question for our clearly established analysis is whether the state of

the law at the time the officers acted gave them fair warning that their conduct was unconstitutional." *Bates v. Harvey*, 518 F.3d 1233, 1248 (11th Cir. 2008) (quotation marks omitted).

### A.

When officers execute a search warrant for contraband, "safety considerations require that they secure the premises, which may include detaining current occupants." *Bailey v. United States*, 568 U.S. 186, 195 (2013). "By taking unquestioned command of the situation, the officers can search without fear that occupants, who are on the premises and able to observe the course of the search, will become disruptive, dangerous, or otherwise frustrate the search." *Id.* (quotation marks omitted). And even without evidence of "a special danger to the police," we have recognized, "executing the warrant may give rise to sudden violence or frantic efforts to conceal or destroy evidence." *United States v. Martin*, 972 F.3d 1230, 1237 (11th Cir. 2020) (quotation marks omitted).

Nevertheless, a "seizure that is lawful at its inception can violate the Fourth Amendment if its manner of execution unreasonably infringes interests protected by the Constitution." *Illinois v. Caballes*, 543 U.S. 405, 407 (2005); *see Croom v. Balkwill*, 645 F.3d 1240, 1250 (11th Cir. 2011) ("When dealing with limited seizures not subject to the probable-cause requirement, a seizure that is reasonable at its inception may quickly become unreasonable if it extends beyond its unique justification."). That can happen when a search or seizure is "conducted in a manner 'unusually harmful to an individual's privacy or even physical interests.'" *May v. City of*

*Nahunta, Ga.*, 846 F.3d 1320, 1330 (11th Cir. 2017) (quoting *Whren v. United States*, 517 U.S. 806, 818 (1996)); *see Michigan v. Summers*, 452 U.S. 692, 705 n.21 (1981) (stating that "special circumstances, or possibly a prolonged detention," may render detention during a search unreasonable).

The essential question is whether the seizure is "objectively reasonable" under the totality of the circumstances. *See Stephens v. DeGiovanni*, 852 F.3d 1298, 1317 (11th Cir. 2017). Thus, "while detentions of occupants during the period of a search will under most circumstances prove to have been reasonable, a detention may be unreasonable in a particular instance . . . because it is carried out in an unreasonable manner." *Franklin v. Foxworth*, 31 F.3d 873, 876 (9th Cir. 1994).

We have recognized that "people have a protected privacy interest in avoiding . . . exposure of their naked bodies." *Padgett v. Donald*, 401 F.3d 1273, 1281 (11th Cir. 2005); *see United States v. Afanador*, 567 F.2d 1325, 1331 (5th Cir. 1978) ("In a civilized society, one's anatomy is draped with constitutional protections."). Because "most people have a special sense of privacy in their genitals," the "involuntary exposure of them" to others "may be especially demeaning and humiliating." *Fortner v. Thomas*, 983 F.2d 1024, 1030 (11th Cir. 1993) (recognizing prisoners' "right to bodily privacy"). Thus, absent a legitimate reason, individuals retain the right not to have their naked bodies involuntarily exposed. *See Padgett*, 401 F.3d at 1281; *Fortner*, 983 F.2d at 1030.

In *Los Angeles County v. Rettele*, the Supreme Court addressed whether officers violated the Fourth Amendment when they forced suspects to expose themselves during the execution of a search warrant. 550 U.S. 609, 615–16 (2007). Officers entered the plaintiffs' home with a valid search warrant, ordered the plaintiffs—who were naked—out of bed, and did not allow them to "retrieve clothing or to cover themselves with the sheets." 550 U.S. at 611, 615. After about two minutes, once the police were satisfied that no immediate threat was presented, the officers allowed the plaintiffs to dress. *Id.*

Because there was no evidence that the "deputies prevented [the plaintiffs] from dressing longer than necessary to protect their safety," the Court held that the officers acted reasonably to protect themselves from danger. *Id.* at 615–16. In other words, the Fourth Amendment is not violated "[w]hen officers execute a valid warrant and act in a reasonable manner to protect themselves from harm," even if the officers cause real "frustration, embarrassment, and humiliation" to innocent occupants in the process. *See id.*

In *May*, an officer responding to assist EMTs on a 911 call detained a woman in a locked room for twenty minutes and forced her to disrobe and change before transport for a psychological evaluation. 846 F.3d at 1331. The officer refused her requests to leave, failed to ask a female EMT to remain with her instead, and even "used the threat of deadly force to compel her to remove her shorts, in order to first put on undergarments, by patting his gun after she initially refused." *Id.* The officer claimed that his actions

were justified to have the woman, who was wearing a nightgown, put on more appropriate clothing for transport, and to prevent self-harm. *Id.*

We held that, while the initial seizure was supported by arguable probable cause, questions of fact existed "with respect to whether the seizure was conducted in an extraordinary manner, unusually harmful to [the plaintiff's] privacy interests." *Id.* at 1329. We explained that an "initially constitutional seizure can become unconstitutional where it is executed in an extraordinary manner." *Id.* at 1330. "Balancing the government interest" in safety and prevention of self-harm against the plaintiff's "interest in bodily sanctity and personal security," we concluded that the officer's conduct "exceeded the scope of the underlying justification and that he failed to use reasonable means to rectify the situation." *Id.* We reasoned that the officer's "patent disregard for [the plaintiff's] personal dignity" over a "prolonged duration" was sufficient to violate the Fourth Amendment. *Id.*

We also held that the officer was not entitled to qualified immunity. *Id.* at 1332. We reasoned that it would have been obvious to any reasonable officer that he could not engage in "degrading and humiliating methods" to conduct a seizure, such as using the "threat of deadly force to compel a female civilian to disrobe" for transport for a psychological evaluation. *Id.* That conduct, we observed, was "representative of the type of unnecessarily invasive and demeaning intrusion that is undoubtedly within the sphere of what the Fourth Amendment prohibits." *Id.* Given the officer's

"disregard for [the plaintiff's] privacy, his use of forcible language coupled with the threat of deadly force, the prolonged duration of the seizure, and the inappropriateness inherent in the circumstances," we concluded that the manner of seizure went "well beyond the hazy border that sometimes separates lawful conduct from unlawful conduct." *Id.* (quoting *Evans v. Stephens*, 407 F.3d 1272, 1283 (11th Cir. 2005) (en banc)).

## B.

Here, we conclude that genuine issues of material fact remain as to whether Griffin suffered a constitutional violation on August 29, 2019. Before explaining why, we start with a few points of clarification.

In executing the search warrant, the validity of which Griffin does not dispute, the deputies were permitted to detain the occupants of the residence, including Griffin and her children, while they secured the premises. *See Bailey*, 568 U.S. at 195; *Martin*, 972 F.3d at 1237. The fact that Griffin was naked when they arrived did not prevent the officers from acting to protect themselves and the occupants and to prevent destruction of evidence by ordering the occupants to leave the premises, even if it resulted in "frustration, embarrassment, and humiliation" to an innocent occupant like Griffin. *See Rettele*, 550 U.S. at 615–16. Thus, the question is whether, under the totality of the circumstances, Griffin's "right to personal security was unreasonably violated by [the deputies'] actions following the initial seizure." *May*, 846 F.3d at 1330.

Construing the evidence and drawing all reasonable inferences, genuine issues of material fact remain as to whether the "deputies prevented [Griffin] from dressing longer than necessary" for safety or investigatory reasons. *Rettele*, 550 U.S. at 615–16. Usually, the "slight" nature of the "additional intrusion caused by detention" is reasonable "because the justifications for detention are substantial." *Bailey*, 568 U.S. at 193 (quotation marks omitted). But the circumstances of Griffin's detention were far more intrusive than usual. And the evidence, construed in Griffin's favor, supports a finding that she was detained in unusually demeaning conditions for longer than reasonably justified by safety or investigatory reasons. *See Rettele*, 550 U.S. at 615–16.

Griffin was prevented from dressing for nearly 40 minutes.[2] That's a long time to be detained nude, mostly outside the home and in a semi-public setting. While it was dark at the outset of the seizure, and the deputies took some steps to mitigate Griffin's nudity, both Griffin and her son testified that the rain jacket was too small, too short, and did not cover Griffin's genitalia or buttocks, even if it was capable of adequately covering her breasts if held

---

[2] Defendants claim that "[a]pproximately 34 minutes elapsed between the time Griffin exited her residence, officers secured Streeter, and she was able to dress." Construing the evidence in the light most favorable to Griffin, however, she left her home at approximately 5:47 a.m., and was not permitted to dress until around 6:26 a.m., for a total of nearly 40 minutes. But even if Defendants can prove at trial that it was 34 minutes, genuine issues of material fact still would remain as to whether the "deputies prevented [Griffin] from dressing longer than necessary" for safety or investigatory reasons. *Rettele*, 550 U.S. at 615–16.

14                    Opinion of the Court                 25-10929

closed.[3]  Moreover, it appears to have become light outside while Griffin was in the patrol car with her two children.  The evidence also shows that Griffin was not wearing the jacket for part of that time.  So she remained fully naked and visible to her own children in the car—including one of the opposite sex—as well as nearby deputies through the car's windows.

A reasonable jury could also conclude that "less intrusive means were practically available to accomplish the objective of the seizure."  *May*, 846 F.3d at 1330 n.6 ("The question of reasonableness may sometimes turn on whether less intrusive means were practically available to accomplish the objective of the seizure, as in the context of an unduly intrusive search or an extended detention.").  No evidence was presented to show why Griffin could not have received a more adequate covering, or even the fitted sheet she eventually received, while she was inside the patrol car.

Defendants argue that the delay was necessary for safety reasons due to Streeter's failure to comply.  But a reasonable jury could conclude otherwise.  Approximately fifteen law enforcements officers were on scene, several of whom were not directly involved in securing Streeter.  And it appears officers had swept the

---

[3] Contrary to the district court, we see nothing in the body-camera footage that directly or obviously contradicts the testimony on these points, such that no reasonable jury could credit it, even assuming the court is correct that Griffin's breasts were adequately covered.  *See Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1253–54 (11th Cir. 2013) (stating that "a plaintiff's testimony cannot be discounted on summary judgment unless it is blatantly contradicted by the record," including video evidence).

rest of the house before encountering Streeter in his bedroom. In any event, Streeter was in custody by approximately 6:07 a.m., more than ten minutes before Griffin received any covering for her genitalia or buttocks. Construed in Griffin's favor, this evidence supports a reasonable inference that Griffin was prevented from covering her naked intimate parts for "longer than necessary."[4] *See Rettele*, 550 U.S. at 615–16.

Based on the totality of the circumstances, as construed in favor of Griffin, the nonmoving party, a reasonable jury could conclude that deputies violated her Fourth Amendment right to personal privacy during the execution of the search warrant on August 29, 2019.

## C.

We now turn to the question of whether Defendants Brown and Carpenter are entitled to qualified immunity for their conduct. Whether qualified immunity applies must be decided "on a claim-by-claim and defendant-by-defendant basis." *Miller*, 129 F.4th at 1333. The unlawfulness of each defendant's conduct must have been "clearly established at the time" it occurred. *Pearson*, 555 U.S. at 244.

---

[4] Nor is it clear why Griffin could not have been permitted to dress immediately upon her return to the home. The only justification offered was the reading of the search warrant. But there's no evidence that safety or investigatory considerations would change if Griffin had been permitted to dress before the reading of the warrant, rather than after, because the residence was secured by that point.

"To be clearly established, a right must be well-established enough that every reasonable official would have understood that what he is doing violates that right." *Gates v. Khokhar*, 884 F.3d 1290, 1296 (11th Cir. 2018) (quotation marks omitted). In other words, officers are entitled to "fair warning that their conduct was unconstitutional." *Bates*, 518 F.3d at 1248. If the reasonableness of the officers' conduct is "arguable," qualified immunity likely applies. *See, e.g.*, *Jackson v. Sauls*, 206 F.3d 1156, 1165 (11th Cir. 2000) ("When an officer asserts qualified immunity, the issue is not whether reasonable suspicion existed in fact, but whether the officer had 'arguable' reasonable suspicion to support an investigatory stop.").

1.  Defendant Brown

As the district court explained, Brown's conduct with respect to Griffin was fairly limited. Although he prepared the search warrant, planned the search, and saw Griffin nude at the outset of the encounter, the initial detention of Griffin was lawful, as we explained above. And there is no evidence that Brown was involved in her detention until she returned to the home and he read her the search warrant. At that point, as the district court explained, Brown was inside her home (not outside), and she had a fitted sheet wrapped around her body. So she was no longer forced to expose her naked body, even if the circumstances of her detention remained more intrusive than usual. We cannot say Brown had fair notice it was unlawful to detain Griffin in the bedsheet briefly while reading the search warrant, before allowing her to dress.

That Brown prepared the search warrant does not make him liable for all unreasonable conduct during the search. The circumstances here are not like a facially deficient search warrant, where it makes sense to hold the officer who prepared the deficient warrant responsible. *See Groh v. Ramirez*, 540 U.S. 551, 563–66 (2004). Nor is this case anything like *Amaechi v. West*, 237 F.3d 356, 359–60 (4th Cir. 2001), where an officer conducted a "sexually intrusive search"—touching and penetrating an arrestee's vagina—incident to arrest for violating a noise ordinance. Accordingly, we agree with the district court that Brown is entitled to qualified immunity.

## 2. Defendant Carpenter

Griffin's claim against Carpenter is for supervisory liability under § 1983. "Supervisors can be held personally liable when either (1) the supervisor personally participates in the alleged constitutional violation, or (2) there is a causal connection between the actions of the supervisor and the alleged constitutional violation." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1308 (11th Cir. 2009). The plaintiff also must establish a constitutional violation. *Id.*

Here, a reasonable jury could conclude that Griffin satisfied the elements of supervisory liability. *See id.* In the light most favorable to Griffin, the record shows that Carpenter, in contrast to Brown, maintained control over and responsibility for Griffin's detention. He was personally involved in procuring the jacket for Griffin, he interacted with her while she was in the patrol car at the plaza, and he oversaw her transfer from the patrol car to the residence with the fitted bedsheet as covering. And for the reasons we

have already explained, a reasonable jury could conclude that Griffin's right to personal privacy was violated during the execution of the search warrant on August 29, 2019.

Still, it's not enough "to demonstrate that a genuine issue of fact exists on the merits of her claim." *Keith v. DeKalb County*, 749 F.3d 1034, 1048 (11th Cir. 2014). Rather, Griffin must also overcome Carpenter's assertion of qualified immunity by showing that the unlawfulness of the conduct was "clearly established at the time [Carpenter] acted." *Id.* (quotation marks omitted). "The notice must be clear to every reasonable official, and it must place the law beyond debate." *Hughes v. Locure*, 166 F.4th 121, 128 (11th Cir. 2026) (quotation marks omitted). We think that's the case here.

The Supreme Court's decision in *Rettele* established that police officers violate the Fourth Amendment when they force an arrestee to expose herself "longer than necessary to protect their safety" or to effectuate some other legitimate purpose. 550 U.S. at 615. *Rettele* and our decision in *May* also established that unnecessary involuntary exposure to officers, even in a private setting, violates the Fourth Amendment, and that "patent disregard for [a plaintiff's] personal dignity" over a "prolonged duration" is unlawful. *Id.*; *May*, 846 F.3d at 1330–31 (holding that an officer violated the Fourth Amendment by detaining a woman in her bedroom and forcing her to disrobe and change before transport).

Here, unlike in *Rettele*, where the involuntary nudity was constitutional because it was brief and lasted no longer than necessary to protect the officers' safety, Griffin's involuntary exposure

continued for longer than necessary, with no good law-enforcement purpose. In the light most favorable to Griffin, a reasonable jury could conclude that, even though her nude detention may have been justified at the outset, Carpenter and deputies under his supervision forced her to expose her intimate parts against her will to her children and deputies on scene, if not the public more generally, for at least ten minutes without any legitimate law-enforcement purpose. Accordingly, we find it was clearly established at the time of the incident in question that Griffin had a broad constitutional right to bodily privacy, and that in the light most favorable to her, a reasonable jury could find that Defendant Carpenter violated that right.

*D.*

Finally, we consider Griffin's claim against the Sheriff under Fla. Stat. § 768.28. The district court granted summary judgment on this claim for three reasons: (1) Griffin could not bring a constitutional claim under § 768.28; (2) Griffin failed to assert a negligence claim in her complaint; and (3) even if a negligence claim was asserted, no "reasonable jury could find that the deputies breached any duty of care owed to [Griffin]." Griffin does not dispute the first determination, but she argues that she adequately pled a negligence claim and that the evidence was sufficient to prove the elements of negligence.

We vacate the grant of summary judgment to the Sheriff and remand for further proceedings. For the reasons we have already explained, a reasonable jury could find that the deputies

breached a duty of care owed to Griffin by forcing her to expose her intimate parts for longer than reasonably necessary under the circumstances. *See, e.g.*, *Kaisner v. Kolb*, 543 So.2d 732, 734 (Fla. 1989) ("So long as petitioner was placed in some sort of 'custody' or detention, he is owed a common law duty of care."). Since the district court did not go further, we do not otherwise address whether the evidence is sufficient to prevail on a negligence theory.

We also agree with Griffin that the district court erred in refusing to consider a negligence theory for failure to raise that claim in the amended complaint. All that is required under the federal pleading rules is "a short and plain statement of the claim," Fed. R. Civ. P. (a), which "give[s] the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests," *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (cleaned up). "[T]he federal notice pleading standard only requires allegations as to every material point necessary to sustain a claim on any legal theory, even if it is not the precise theory advanced by the plaintiff." *Ray v. Comm'r, Ala. Dep't of Corr.*, 915 F.3d 689, 697 n.3 (11th Cir. 2019).

Thus, the amended complaint need not have used specific terminology or identified the "precise theory" under which Griffin intended to prevail on her § 768.28 claim against the Sheriff. And the pleading otherwise alleged that, while detaining her in the execution of their duties, the deputies on scene forced her to expose her nude body in an unreasonable manner, causing her injury. Accordingly, we conclude that Griffin did not present a new claim at

summary judgment by attempting to proceed on a negligence theory against the Sheriff.

## IV.

In sum, we affirm the grant of qualified immunity to Defendant Brown.  We vacate the grant of qualified immunity to Defendant Carpenter, as well as the grant of summary judgment to Sheriff Aden.  We remand for further proceedings consistent with this opinion.

**AFFIRMED in part; VACATED in part; and REMANDED for further proceedings.**